**HARTNESS INTERNATIONAL, INC.,**
Appellee/Cross-Appellant,

v.

**SIMPLIMATIC ENGINEERING CO.,**
Appellant/Cross-Appellee.

**Appeal Nos. 86–1037, 86–1086.**

United States Court of Appeals,
Federal Circuit.

May 12, 1987.

Harold James, James & Franklin, New York City, argued, for appellant/cross-appellee.

Julian W. Dority, Dority & Manning, P.A., Greenville, S.C., argued, for appellee/cross-appellant. Also on the brief, was David T. Petty, Jr., Kizer, Phillips & Petty, Lynchburg, Va.

Before FRIEDMAN, DAVIS, and SMITH, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this case, Hartness International, Inc. (Hartness International), sued Simplimatic Engineering Co. (Simplimatic) for infringement of two patents, No. 3,788,034 ('034) and No. 3,911,647 ('647), both relating to devices used to load bottles into cartons. The United States District Court for the Western District of Virginia held:[1] (1) the '034 patent was not procured by inequitable conduct and it remains enforceable; (2) claims 1, 2, and 7–11 of the '034 patent are not invalid for obviousness, but claim 3 (dependent on claim 1) of the '034 patent is invalid because it lacks novelty; (3) the '647

---

1. *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.,* No. 83–0028–L (W.D.Va. Feb. 5, 1986).

patent is invalid because of obviousness-type double patenting; (4) claims 1, 2, and 7–11 of the '034 patent are infringed by Simplimatic; and (5) damages in the amount of $491,259 must be paid by Simplimatic to Hartness International.

The district court's holding that claim 3 of the '034 patent is invalid is reversed. In all other respects, the final judgment of the district court is affirmed.

## ISSUES

The following issues are presented on appeal:

1. Whether the district court erred in holding that the '034 patent was enforceable because Simplimatic had failed to prove by clear and convincing evidence that Hartness International procured the patent by inequitable conduct;

2. Whether the district court erred in holding that claims 1, 2, and 7–11 of the '034 patent are valid, but that claim 3 (dependent on claim 1) of the '034 patent is invalid;

3. Whether the district court erred in holding that the '647 patent is invalid because of obviousness-type double patenting;

4. Whether the district court clearly erred in holding that claims 7–11 of the '034 patent were infringed; and

5. Whether the district court abused its discretion in awarding damages based on Hartness International's proved actual lost profits on fingers, but expressed in terms of a 70 percent royalty on Simplimatic's gross sales price for fingers.

## BACKGROUND

### A. *The Technology.*

Hartness International's patents relate to a process known as "drop packing," whereby the bottles are dropped from a conveyor belt into cartons below (see fig. 1). A "grid set" is used with "fingers" (usually four) to engage each bottle as it is dropped. The fingers guide the bottle into the cardboard carton, and the fingers also help to open and position the carton.

Figure 1. ('034 Patent)
Case Packer Equipped with Patented
Grid Set "A," Fingers "F," and Wings "G"

In the prior art, thin flexible fingers made of spring steel were used to guide the bottles into the carton. The thin flexible fingers were commonly "side-positioned," that is, one finger was positioned on each of the four sides of the bottle compartment. The prior art also included "corner-positioning," where one finger was positioned in each of the four corners of the compartment (see fig. 4). The thin flexible fingers worked tolerably well when new, but they wore out quickly, were difficult to replace, and permitted substantial breakage of the glass bottles.

The Hartness brothers, Thomas and Robert, were confronted with the problems with the prior art in their work in the family soft drink bottling business. As a solution to the problems with the thin flexible fingers, the Hartness brothers invented a grid set (fig. 1) using "rigid" fingers (see figs. 2, 3) (the '034 patent). Because of the

thickness of the rigid fingers, the Hartness brothers used corner-positioning to take advantage of the space between the bottle and the corner of the compartment (see fig. 4). The '034 patent describes in detail how the rigid fingers are mounted in the grid set, using a pivot point, a retaining ring, and a spring to enable the fingers to move as required (see fig. 5). The '034 patent also claims metal "wings" which form a right angle at the rear of each finger (see figs. 1–4). The purpose of the right angle wings is "to square up the carton compartment so it would be of the appropriate shape to receive a bottle."

Figure 2. ('034 Patent)
Fingers "F" with Wings "G" Guiding
Bottle into Carton

Figure 4 ('034 Patent)
Top View of Corner-Positioned
Fingers "F" with Wings "G"
Guiding Bottle into Carton

Figure 3 ('034 Patent)
Fingers "F" with Wings "G"
Ready to Receive Bottle

The '647 patent claims a finger similar to the one disclosed in the '034 patent (see fig. 6). The primary improvement in the '647 finger is an arcuate (curved) inner surface to conform to the shape of the bottle. The '647 finger also has other improvements over the '034 finger, including an extension of the right angle wings from top to bottom to better engage the corner of the compartment.

Figure 5. ('034 Patent)
Portion of Grid Set,
Mounting System for Fingers "F"

Figure 6. ('647 Patent)
Grid Set with Patented Fingers "19"

The Hartness brothers were so pleased with the invention claimed in the '034 patent that they left the bottling business, formed Hartness International, and began to manufacture and sell case-packers with the patented grid sets and fingers. Hartness International also sold the fingers separately from the grid sets. The grid sets and fingers claimed in the '034 patent were a tremendous commercial success.

Simplimatic bought a number of the Hartness International fingers and used them, with some modifications, in its own manufacture and sale of 4-finger grid sets and of packing machines. Simplimatic also developed a 2-finger grid set, entirely of its own manufacture, for packaging wide-mouthed jars.

## B. *District Court Opinion Dated July 30, 1984.*

The district court made the following determinations in its July 30, 1984, opinion:

1. Simplimatic's 4-finger structure infringes claims 1, 2, 7, 8, 9, 10, and 11 of the '034 patent.

2. Claim 3 of the '034 patent is invalid.

3. Simplimatic's 2-finger structure does not infringe any of the '034 claims.

4. The '647 patent is invalid.

## C. *Special Master's Findings.*

The district court referred the case to a special master (master) for the determination of compensatory damages, as well as punitive damages and attorney fees, if any, to be awarded for the infringement of the '034 patent. The master appointed an independent accounting firm to determine the amount of lost profits.

After an evidentiary hearing, the master determined that Simplimatic's infringement had not been willful, and he did not award punitive damages. However, the master found the case to be "exceptional," justifying the award of attorney fees to Hartness International. The master also determined that Simplimatic should reimburse Hartness International for the part of the accountants' fee previously paid by Hartness. Thus, the master determined that Hartness International was entitled to the following recovery from Simplimatic:

| | |
|---|---|
| Lost Profits on Grid Sets | $342,253 |
| Prejudgment Interest [2] on Lost Profits on Grid Sets | 56,516 |
| Lost Profits on Fingers Not Used in Grid Sets | 158,637 |
| Attorney Fees and Expenses Through April 30, 1985 | 81,880 |
| Reimbursement—Accounting Fees | 11,000 |
| Total Due Hartness International by Simplimatic as of April 30, 1985 | $650,286 |

The master also found that Simplimatic was liable for payment of $4,170 for additional accounting services.

## D. *District Court Opinion and Judgment Dated February 5, 1986.*

In its February 5, 1986, opinion, the district court reviewed several exceptions made by the parties to the master's report. The February 5, 1986, judgment entered by the district court reflects two main changes from the master's report. First, the district court held that Hartness International was *not* entitled to attorney fees because, in the absence of a finding of willful infringement, there was no other basis in the record for a finding of an exceptional case. Second, the court held that the master erred in awarding $158,637 in proved actual lost profits on the *fingers*, because Hartness International was bound by its earlier position that it was entitled only to a 70 percent royalty on the fingers. The district court lowered the damages on fingers to $81,490, calculated in terms of a 70 percent royalty on Simplimatic's gross sales price for fingers. The district court affirmed the special master's award of lost profits on the grid sets of $342,253.

Thus, the district court entered judgment that Hartness International shall recover from Simplimatic:

do not challenge the award, or the amount, of prejudgment interest.

---

**2.** The accounting firm calculated prejudgment interest only for damages on grid sets, and not for damages on fingers. On appeal, the parties

Total of grid damage of $342,743 [*sic*, should be $342,253] and finger damage of $81,490 (plus post judgment interest) .......... $423,743
Prejudgment interest .......... 56,516
Reimbursement—accounting fees .......... 11,000
Total due Hartness International by Simplimatic as of April 30, 1985 .......... $491,259

The district court also directed Simplimatic to pay certain fees directly to the special master and to the accounting firm. The district court further entered an injunction against Simplimatic from further infringement. Finally, the district court stayed the judgment pending appeal, conditioned upon Simplimatic's posting of an appropriate bond.

## ANALYSIS

### A. *Inequitable Conduct.*

■ Simplimatic alleges error in the district court's holding that Simplimatic had failed to prove by clear and convincing evidence that Hartness International had obtained the '034 patent through inequitable conduct. The alleged inequitable conduct involved one of the inventor's (Thomas Hartness) failure to disclose to the examiner that he had "heard of" corner-mounted fingers from other bottlers.

Concerning materiality, the district court stated that the essence of the invention was that the fingers were rigid rather than flexible, and that this change required the solution to several problems. Only one of the many problems involved corner mounting.

At trial, Simplimatic showed only that Thomas Hartness had "heard of" corner-mounted flexible fingers subject to the same problems as the other prior art. Thomas Hartness testified that he had never seen a corner-mounted finger, that he did not know the name of the manufacturer, and that he did not even consider such corner-mounted flexible fingers to be relevant to his invention of corner-mounted rigid fingers as claimed in the '034 patent.

The district court found that such limited knowledge of corner-mounting would have been of only limited materiality to the prosecution of the '034 patent, and that it was not intentional misrepresentation or gross negligence for Thomas Hartness to fail to disclose the information.

On appeal, Simplimatic must show clearly erroneous findings or error of law. "A holding of fraud or inequitable conduct requires support in the underlying facts, and on these we must defer to the judgment of the trial judge in the absence of evidence on the record clearly establishing error."[3]

On this record, we cannot say that the trial court made clearly erroneous findings or error of law in holding that inequitable conduct had not been proved by clear and convincing evidence, and that the '034 patent remained enforceable.

### B. *Validity of '034 Patent Claims.*

The district court held that Simplimatic had failed to prove by clear and convincing evidence that claims 1, 2, 7, 8, 9, 10, and 11 of the '034 patent were invalid on the basis of obviousness. However, the district court held that claim 3 (dependent on claim 1)[4] was invalid on the basis that the "ta-

---

3. *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1384, 217 USPQ 1281, 1287 (Fed.Cir.1983).

4. Claim 1 (representative of the claims in the '034 patent) and claim 3 read as follows:

"1. An apparatus for loading a plurality of articles into cartons comprising: a grid set, means for positioning said articles in aligned rows above said grid set, means for positioning a carton below said grid set, said grid set including a plurality of elongated spaced members being spaced apart sufficiently for allowing said articles to pass therebetween, guide members spaced along said elongated space members defining square passages through which said arti-

cles pass for loading into said carton, said guide members including elongated downwardly extending rigid arms pivotally attached to said elongated spaced members adjacent the corners of said passages, a lower end of each of said rigid arms extending inwardly toward the center of one of said passages for engaging said articles as said articles are dropped through said passages into said carton, whereby said arms pivot towards the corners of said passages as said articles pass through said passages.

&ast; &ast; &ast; &ast; &ast; &ast;

"3. The apparatus as set forth in claim 1, wherein said guide members include, partitions carried between said passages having opposed upper surfaces tapering downwardly from an

pered partition" feature added in dependent claim 3 lacked novelty over a prior art patent.

■■■ First, we hold that the district court erred in failing to consider that dependent claim 3 included all the limitations of claim 1, with the further limitation of tapered partitions. For the reasons stated below, the district court was correct in holding that independent claim 1 was nonobvious. *A fortiori,* dependent claim 3 was nonobvious (and novel) because it contained all the limitations of claim 1 plus a further limitation.[5] The district court's holding that claim 3 was invalid is reversed. We note that the district court made no finding as to infringement of claim 3 of the '034 patent. On this record, it does not appear that the award of damages would be increased even if claim 3 were found to be infringed; therefore, a remand for this purpose is unnecessary.

With respect to claims 1, 2, 7, 8, 9, 10, and 11, we can discern no reversible error in the district court's holding of nonobviousness under 35 U.S.C. § 103 (1982). The district court correctly applied *Graham v. John Deere Co.*[6] in answering certain factual inquiries: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) the so-called "secondary considerations," such as commercial success, long-felt need, or unexpected results.

The district court made findings on the scope and content of 22 patents that Simplimatic relied on in attempting to prove that the '034 claims were invalid for obviousness. After comparing the prior art to the claims at issue, the district court found that Hartness International had made a "decided improvement" over the prior art in several respects. The district court also found considerable commercial success, the satisfaction of a long-felt need, and a large degree of copying of Hartness International's finger by Simplimatic.

■■ On appeal, Simplimatic argues that each of the elements of the Hartness International invention are found in the prior art. The district court correctly rejected this argument, stating that the inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole for which patentability is claimed.[7]

■■ Simplimatic has failed to show that the district court made clearly erroneous findings or error of law in its holding that claims 1, 2, 7, 8, 9, 10, and 11 of the '034 patent are nonobvious; therefore, that holding is affirmed.

### C. *Invalidity of the '647 Patent.*

■■ The district court held the '647 patent invalid for obviousness-type double patenting based on the copending '034 application and on the prior art.[8] No terminal

---

apex towards adjacent passages for directing said articles into said passages as said articles are dropped from said aligned rows above said grid set."

5. *See Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1576 n. 36, 1 USPQ2d 1593, 1604 n. 36 (Fed.Cir.1987).

6. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966).

7. *In re Sernaker,* 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983).

8. Claim 1 (representative of the claims in the '647 patent) and claim 3 (asserted by Hartness International to be "the most distinguishable claim from the [']034 patent") read as follows:

"1. A positioning arm for use in a grid set on an article loading machine, wherein articles such as bottles are loaded from aligned rows carried above said grid set into a case carried below said grid set, said grid set including a plurality of elongated spaced members being spaced apart sufficiently for allowing said articles to pass therebetween, a plurality of said positioning arms being supported on said elongated spaced members for defining passages through which said articles pass for loading into said case, each of said positioning arms being carried in a respective corner of a passage, resilient means engaging said positioning arms for pivoting a lower end of said positioning arms towards the center of said passages, said positioning arm comprising:

"an elongated member having an upper portion, a main body intermediate portion and a lower portion,

disclaimer was filed with the '647 patent application.

In *In re Longi,*[9] this court held that patent claims may be rejected for obviousness-type double patenting based on a co-pending patent application, where a terminal disclaimer has not been filed, to prevent extension of the patent term.

The district court made findings on the scope and content of each claim in the '647 patent, as well as the distinctions over the '034 patent and the prior art. The district court found that the '647 patent was primarily a refinement of the '034 finger. The district court found that the main feature which set the '647 patent apart from the '034 patent was the arcuate (curved) inner surface of the finger, to conform to the shape of the bottles being loaded. The district court held that the claims of the '647 patent would have been obvious in view of the finger claimed in the '034 patent and in view of the curved fingers in the prior art.

The district court noted that during the prosecution of the '647 patent application, the examiner had initially rejected the claims on the basis of obviousness over the '034 patent application, but the rejection was withdrawn after Hartness International argued that the '034 patent application was not properly cited as prior art because the two applications were copending. The district court held the examiner's initial action had been correct, and that the '647 patent was invalid for obviousness-type double patenting, even though the examiner had not made a rejection by that

name. The district court's analysis was correct under *In re Longi.*

Hartness International has not shown error in the district court's conclusion of obviousness-type double patenting of the '647 patent, or clear error in the underlying findings; therefore, we must affirm the district court's holding that the '647 patent is invalid.[10]

**D.  *Infringement of the '034 Patent Claims.***

■ The district court found that Simplimatic's 4–finger structure infringed claims 1, 2, 7, 8, 9, 10, and 11 of the '034 patent, but that Simplimatic's 2–finger structure did not infringe any of the '034 claims. On appeal, Simplimatic concedes that its 4–finger structure infringed claims 1 and 2. Simplimatic argues that the district court clearly erred in finding that its 4–finger structure infringed the "means plus function" claims 7, 8, 9, 10, and 11.

The district court correctly determined the scope of the asserted claims after considering the language of the claims, the patent specification, and expert testimony.[11] The court found that Simplimatic's 4–finger structure was identical to the structure claimed in the '034 patent in all respects except for the "pivot point" and "resilient means" of the '034 claims. Then, the court inquired whether certain elements of the Simplimatic structure performed substantially the same function, in substantially the same way, to accomplish substantially the same result, as the "pivot point" and "resilient means" claimed in

"said main body portion having an elongated arcuate inner surface for engaging said surface of said articles as said articles pass through said passages for loading into said case, and

"a rear side of said upper portion of said elongated member opposite said arcuate inner surface being inclined inwardly defining a pivot point at the junction of said main body portion and said upper portion,

"whereby said lower end of said positioning arm can be pivoted towards and away from said center of said passage for guiding said articles therethrough.

\*  \*  \*  \*  \*  \*

"3.  The positioning arm as set forth in claim 1 wherein said lower portion of said elongated

member is inclined rearwardly from said intermediate position so as not to engage a surface of said article when said article bounces in said case during loading."

**9.**  *In re Longi,* 759 F.2d 887, 892–93, 225 USPQ 645, 649 (Fed.Cir.1985).

**10.**  *Id.; see Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1574, 224 USPQ 409, 412 (Fed.Cir.1984).

**11.**  *See McGill Inc. v. John Zink Co.,* 736 F.2d 666, 672–75, 221 USPQ 944, 948–51 (Fed.Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984).

the '034 patent. "Whether that accused device is a § 112 equivalent of the described embodiment is a question of fact." [12] The district court found that Simplimatic's pivot point and resilient means construction were the equivalents of Hartness International's construction, and, therefore, infringed the '034 claims.

■ The district court rejected Simplimatic's argument that "its means is so different in its operation and so superior to [Hartness International's] that it should not be classified as an equivalent." On appeal, Simplimatic argues that the application of the reverse doctrine of equivalents is a question of law freely reviewable by this court, citing *Kalman v. Kimberly-Clark Corp.*,[13] however, that case was overruled by this court, in banc, on precisely that issue in *SRI International v. Matushita Electric Corp. of America* [14] well in advance of Simplimatic's argument in this court. Thus, infringement by the doctrine of equivalents, as well as noninfringement by the reverse doctrine of equivalents, are both questions of fact reviewable under the clearly erroneous standard.

Simplimatic has failed to show clear error in the district court's finding that Simplimatic's 4-finger structure infringed claims 1, 2, 7, 8, 9, 10, and 11; therefore, we affirm the district court's finding.

### E. *Damages.*

■ A summary of the special master's and the district court's findings with respect to damages may be found in the background section of this opinion. In reviewing the district court's judgment, we must recognize that "[t]he methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court." [15] Simplimatic,

as the appellant, has the burden of establishing an abuse of discretion "by showing that the district court either made an error of law, or a clear error of judgment, or made findings which were clearly erroneous." [16]

Simplimatic argues that the district court abused its discretion because: (1) the court should have used a 50 percent discount instead of a 25 percent discount on the sales price of the grids; (2) the court's determination of quantity of grids and fingers sold by Simplimatic was larger than the actual quantity sold; and (3) the court erred in awarding damages in the amount of $81,490 on sales of fingers, expressed in terms of a 70 percent royalty on Simplimatic's gross sales price for fingers.

First, Simplimatic argues that the sales price of the grid sets should reflect the 50 percent discount allowed by Hartness International on sales made *prior* to the period for which infringement was charged. However, the master specifically found that Hartness International sold grid sets at a 25 percent discount, and not at a 50 percent discount, during the period for which infringement was charged. The master's finding was amply supported by testimony and by the independent accounting firm's report, and that finding was accepted by the district court. Simplimatic has failed to show clear error in the master's finding or in the district court's finding as to the grid sales price.

■ Simplimatic also argues that the district court erred in its finding of the number of fingers and grids sold by Simplimatic. The district court, however, found the accounting firm's report to be accurate as to the quantities sold. The accounting firm's report also stated that a certain number of fingers were unaccounted for by

**12.** *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 975, 226 USPQ 5, 8 (Fed.Cir.1985).

**13.** *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771, 218 USPQ 781, 788 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984), *overruled by SRI Int'l v. Matushita Elec. Corp. of America*, 775 F.2d 1107, 1125, 227 USPQ 577, 588 (Fed.Cir.1985) (in banc).

**14.** *SRI Int'l*, 775 F.2d at 1125, 227 USPQ at 588.

**15.** *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898, 229 USPQ 525, 526 (Fed.Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986).

**16.** *Id.*, quoting *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir.1985).

Simplimatic, and the district court inferred that Simplimatic either sold or used the unaccounted-for fingers. Any adverse consequences from Simplimatic's failure to keep accurate records must rest on Simplimatic.[17] Simplimatic has failed to show clear error in the district court's finding of quantities.

Finally, Simplimatic argues that the district court erred in awarding damages in the amount of $81,490 on sales of fingers, expressed in terms of a 70 percent royalty on Simplimatic's gross sales price for fingers. Simplimatic requests this court to substitute its judgment for that of the district court, and to award damages based on a 6 percent royalty instead. Simplimatic ignores the district court's finding that Hartness International had proved actual lost profits on fingers of $158,637, as originally awarded by the special master, and that the district court *lowered* the damages on fingers to $81,490.

■ A review of the record concerning damages from sales of infringing fingers will be helpful at this point, bearing in mind that it is Simplimatic's burden on appeal to show that the district court abused its discretion in its method of assessing and computing damages from sales of fingers.[18]

On January 21, 1985, the independent accounting firm appointed by the special master submitted a report including an accounting of Hartness' lost gross profits on grid sets, but without any information on lost gross profits on fingers.

On May 21–22, 1985, the special master held an evidentiary hearing on damages. At the hearing before the special master, Robert Hartness testified unequivocally that Hartness International had been unwilling to license the patented fingers, preferring to manufacture and sell the fingers itself, and having the capacity to do so. In response to a hypothetical question, however, Hartness testified that *if* his company had had to license the invention, he would

have accepted a royalty of 70 percent on the fingers because that approximated Hartness International's profits.

The special master directed the independent accounting firm to prepare a supplemental report with an accounting of Hartness International's lost profits on fingers. On August 2, 1985, the accounting firm submitted the supplemental report to the special master, showing that Hartness International's lost profits on fingers were in the amount of $158,637. (The accounting firm's report indicates that Hartness International's gross profit on sales of fingers was in the neighborhood of 95 percent.)

On August 13, 1985, the special master issued a report of his findings on damages. Based on the accounting firm's supplemental report and the hearing testimony, the special master found that Hartness International had proved actual lost profits on fingers in the amount of $158,637, and the master awarded damages including that amount.

On December 30, 1985, the district court conducted a hearing at which several motions were addressed, including motions relating to the special master's findings. At the hearing, Simplimatic argued that it was unfair for the special master to award the full amount of $158,637 in lost profits on fingers as reported by the independent accounting firm on August 2, 1985, when at the previous May 21–22, 1985, hearing, Hartness International only had introduced testimony relating to a 70 percent royalty, which would have resulted in damages of only $81,490.

In its February 5, 1986, opinion, the district court held that, although Hartness International had proved actual lost profits of $158,637, Hartness was bound by its earlier position at the hearing before the special master, where the only evidence Hartness International introduced on finger damages was Robert Hartness' testimony relating to a 70 percent royalty.[19]

17. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 USPQ 670, 675 (Fed.Cir.1983).

18. *TWM*, 789 F.2d at 898, 229 USPQ at 526.

19. Hartness International does not appeal the district court's decision that Hartness International was bound by its earlier position relating to a 70 percent royalty, and we do not decide

Thus, the district court lowered the damages award to $81,490, calculated in terms of a 70 percent royalty on Simplimatic's gross sales price for fingers.

The district court emphasized that Hartness International had proved actual lost profits, that Hartness International was not a willing licensor, and that Robert Hartness' 70 percent profit estimate was low when compared to the accountant's report. Thus, the district court declined Simplimatic's invitation to award damages based on an asserted royalty of 3 to 5 percent.

■■■ The district court's opinion refers both to "lost profits" and to a "reasonable royalty." It should be recognized that these terms are usually used to describe two analytically different approaches to the determination of damages in patent infringement cases. The first method of determining damages is based on proved actual lost profits of the patentee as a result of the infringement.[20] The second method, most commonly used when actual lost profits cannot be proved, is to award damages based on a "reasonable royalty."[21] Admittedly, the district court's opinion probably could have been more clear as to which method was used by the court. Nevertheless, "[w]e sit to review judgments, not opinions,"[22] and the judgment must be affirmed if it is supported by the record under either of the accepted methods for determining damages.

■■■ We affirm the district court's award of damages on the basis that it begins with the benchmark amount of Hartness International's proved actual *lost profits*, with a downward adjustment because Hartness International was bound by its earlier position. Simplimatic does not challenge any of the factors involved in the district court's finding of lost profits, but simply requests that this court substitute its judgment for that of the district court by awarding damages based on a 6 percent royalty asserted by Simplimatic to be "reasonable." On the facts of this case, we conclude that Simplimatic has failed to show clear error or an abuse of discretion in the district court's award of damages to Hartness International in the amount of $81,490 on the sales of fingers.

■■■ It should be noted that we do not view this case as applying the "reasonable royalty" method of determining damages. As this court has stated in *Radio Steel & Mfg. Co. v. MTD Products, Inc.*,[23] a "reasonable royalty" is determined as the "royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began." In this case, the district court did not apply the "reasonable royalty" analysis as set forth in *Radio Steel*, and we express no view as to the result the district court would have reached if it had used that method of determining damages. Here, it is sufficient to state that the damages are affirmed on the basis of proved actual lost profits, even though expressed in terms of a royalty rate.

## CONCLUSION

The judgment of the district court is affirmed to the extent it held: (1) the '034 patent was not procured by inequitable conduct and it remains enforceable; (2) claims

---

the issue whether or under what circumstances a party is bound by an earlier position on damages.

**20.** *See, e.g., Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275, 227 USPQ 352, 357 (Fed.Cir.1985), and cases cited therein.

**21.** *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1556–57, 229 USPQ 431, 433 (Fed.Cir.1986); *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 299, 170 USPQ 369, 371 (2d Cir.), *cert. denied*, 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971); 5 D. CHISUM, PATENTS § 20.03[3] (1986).

**22.** *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983).

**23.** *Radio Steel*, 788 F.2d at 1557, 229 USPQ at 433; *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078, 219 USPQ 679, 682 (Fed.Cir.1983) ("The reasonable royalty may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee.").

1, 2, and 7–11 of the '034 patent are not invalid for obviousness; (3) the '647 patent is invalid because of obviousness-type double patenting; (4) claims 1, 2, and 7–11 of the '034 patent are infringed by Simplimatic's 4–finger structure; and (5) damages must be paid by Simplimatic to Hartness International in the amount found by the district court.

The judgment of the district court is reversed to the extent it held that claim 3 (dependent on claim 1) of the '034 patent is invalid because it lacked novelty.

AFFIRMED IN PART, REVERSED IN PART.