INTEL CORPORATION, a Delaware corporation, Plaintiff,

v.

ULSI SYSTEM TECHNOLOGY, INC., a California corporation, Defendant.

Civ. No. 91–742–JO.

United States District Court, D. Oregon.

Dec. 11, 1991.

John R. Bakkensen, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff.

Jere M. Webb, Charles F. Hinkle, Stoel Rives Boley Jones & Grey, Portland, Or., Michael A. Ladra, Joy A. Kruse, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of plaintiff, Intel Corporation (Intel), for a preliminary injunction (# 4).

## BACKGROUND

Intel is a manufacturer of math coprocessors, microprocessors, semiconductor memories, and microprocessor systems. Intel is the assignee of U.S. Letters Patent 4,338,675 and U.S. Reissue Letters Patent 33,629 (collectively, the "Palmer Patent") for an invention entitled "Numeric Data Processor." The Palmer Patent describes an architecture and method for performing floating point arithmetic operations in a numeric data processor. The Palmer Patent is incorporated into an Intel product known as the 80387 math coprocessor (the "80387 coprocessor").[1] At issue in this litigation is the validity of the Palmer Patent and the alleged infringement of the Palmer Patent by defendant, ULSI System Technology, Inc. (ULSI).

ULSI manufactures a product known as the US83C87 math coprocessor (the "US83C87 coprocessor"). Intel alleges that ULSI's US83C87 coprocessor incorporates key elements of the Palmer Patent. Intel contends that ULSI has infringed the Palmer Patent by making and selling, and inducing others to make and sell, the US83C87 coprocessor and similar math coprocessors. Intel also contends that ULSI uses a demonstration diskette that falsely identifies the US83C87 coprocessor as an Intel product, thereby misleading consumers as to the origin and sponsorship of the US83C87 coprocessor.

On July 29, 1991, Intel filed this action against ULSI for patent infringement under United States patent law; for unfair competition and false designation of origin under the Lanham Trade–Mark Act; and for unfair competition under the laws of the State of Oregon. Intel seeks a preliminary injunction enjoining ULSI from (1) continuing to infringe or induce infringement of the Palmer Patent; (2) selling math coprocessors with demonstration diskettes that identify ULSI math coprocessors as Intel math coprocessors; and (3) continuing to make false representations of the origin and sponsorship of ULSI's math

1. A math coprocessor is an integrated circuit that allows computers to perform mathematical calculations at a high rate of speed.

coprocessors. On August 12, 1991, the Honorable Malcolm M. Marsh, United States District Judge, signed a stipulated order permanently enjoining ULSI "from selling or continuing to permit others to sell, any US83C87 math coprocessor with a diagnostic or demonstration diskette that identifies the ULSI math coprocessor as an Intel math coprocessor." Stipulated Permanent Injunction, p. 2, lns. 6–9. Thus, Intel now seeks only to enjoin ULSI's alleged infringement of the Palmer Patent.

## CONTENTIONS OF THE PARTIES

Intel contends that it has met each of the elements necessary for the issuance of a preliminary injunction under 35 U.S.C. § 283: (1) that the Palmer Patent is valid and enforceable; (2) that ULSI's US83C87 coprocessor infringes the Palmer Patent; (3) that Intel is being irreparably harmed by ULSI's continued infringement of the Palmer Patent; and (4) that the balance of hardships and public interest weigh in favor of granting the injunction.

ULSI contends that Intel has failed to show a likelihood that it will succeed on the merits of its claims of validity and infringement. ULSI further contends that Intel cannot show either that it will be irreparably harmed or that the balance of hardships or public interest weighs in its favor.

## APPLICABLE STANDARD

█ Under 35 U.S.C. § 283, a district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." In addressing a motion for a preliminary injunction under section 283, the court considers four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant should the motion be denied; (3) the balance of hardship between the parties; and (4) the impact an injunction will have on the public interest. *We Care, Inc. v. Ultra–Mark Int'l Corp.*, 930 F.2d 1567, 1570 (Fed. Cir.1991). No one of these factors is necessarily dispositive. *Chrysler Motors Corp. v. Auto Body Panels, Inc.*, 908 F.2d 951,

953 (Fed.Cir.1990). A court should consider and assess each of the four factors, balancing each against the others and against the magnitude of the relief requested. *Id.*

## ANALYSIS

### A. *Likelihood of Success on the Merits*

█ Under 35 U.S.C. § 282, a patent is presumed valid. "This presumption of validity places the burden of persuasion as well as the burden of going forward on the party asserting invalidity." *Chrysler Motors Corp.*, 908 F.2d at 953. At the preliminary injunction stage, however, this presumption does not apply. *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed.Cir. 1991). Because of the extraordinary nature of injunctive relief, "the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Id.* (emphasis in original). This does not mean that a movant must prove beyond question its contentions of validity and infringement; rather, the patentee need only make a "clear showing" that its patent is valid and infringed. *Id.* at 869–70 (citing *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed.Cir. 1985)).

In addressing the likelihood of success on the merits, ULSI contends that Intel has failed to demonstrate that it infringed the Palmer Patent. ULSI first argues that the US83C87 coprocessor does not infringe the Palmer Patent because it does not incorporate any of the five claims of the Palmer Patent. ULSI next argues that the Palmer Patent is invalid because all of the claims of the reissued patent are obvious in light of the prior art which Intel allegedly withheld from the Patent Office. Finally, ULSI makes two attacks on Intel's attempt to enforce the Palmer Patent. ULSI argues that inequitable conduct by Intel during the application for the Palmer Patent bars any attempt to enforce the patent. ULSI also argues that a cross-licensing agreement between Intel and Hewlett–Packard provides ULSI with a defense against the infringement claim of Intel.

### 1. Infringement

■ Generally, a finding of infringement depends on whether the accused device falls within the scope of the asserted claims as properly interpreted. *Envirotech Corp. v. Al George, Inc.* 730 F.2d 753, 758 (Fed. Cir.1984). "Literal infringement requires that every limitation of the patent claim must be found in the accused device." *United States v. Telectronics, Inc.*, 857 F.2d 778, 784 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989).

Intel contends that the US83C87 coprocessor literally infringes on every element of claims 5, 7 and 8 of the Palmer Patent. Intel's position is supported by the testimony of William Waite, a professor and chairman of the Department of Electrical and Computer Engineering at the University of Colorado. Waite examined the Technical Specification for the US83C87 coprocessor.[2] Affidavit of William Waite, para. 4. He also conducted his own tests on the US83C87 coprocessor. *Id.* Based on his examinations and tests, Waite found that the US83C87 coprocessor incorporates every element of claims 5, 7 and 8 of the Palmer Patent. *Id.* at paras. 5–8.

ULSI attacks Waite's analysis on a number of grounds. ULSI first contends that Waite never took into account the file history or any prior art in forming his claim interpretation. This contention is without merit, however. Waite read the file history and reviewed the prior art before reaching his conclusions. Rebuttal Declaration of Dr. William Waite, para. 8. ULSI next contends that Waite failed to examine any of the detailed architecture of the US83C87 coprocessor. This contention is also without merit. Waite examined ULSI's detailed circuit schematics for the US83C87 coprocessor and found them "completely consistent" with ULSI's Technical Specification. *Id.* at paras. 3, 7. The record does not support ULSI's contention that Waite's analysis was inadequate or otherwise flawed.

Apart from its criticism of the analysis made by Waite, ULSI contends that it can establish that the US83C87 coprocessor does not infringe any of the five claims of the Palmer Patent. ULSI's position is supported by the testimony of Walstein Bennett Smith III, a Microprocessor Logic Design Engineer at Tredennick, Inc., a logic design and consulting firm based in San Jose, California. Affidavit of Walstein Bennett Smith III. Smith examined the Palmer Patent and compared it to the US83C87 coprocessor. *Id.* at para. 6. Following his analysis, Smith concluded that the US83C87 coprocessor does not infringe on the Palmer Patent because it does not contain the first and fourth elements of claim 5.[3]

■ The first element in claim 5 of U.S. Reissue Letters Patent 33,629 provides: "first means for converting said plurality of data formats to a file format having a fraction and exponent representation wherein said file format has a numeric fraction and exponent domain greater than any one of said plurality of data formats." Reissue Letters Patent 33,629, col. 27, lns. 8–12. The issue with respect to the first element of claim 5 revolves around whether reference to "plurality of data formats" in the claim imposes a limitation on the patent that would distinguish the US83C87 coprocessor from the invention claimed in the Palmer Patent. Taking "plurality of data formats" to mean "every single one of all of the data formats," Smith concludes that this reference does impose a limitation which distinguishes the US83C87 coprocessor from the invention claimed in the Palmer Patent. *See* Affidavit of Walstein Bennett Smith III, p. 14, lns. 3, 10–11. Waite, taking "plurality of data formats" to mean at least two data formats, reaches the opposite conclusion. Rebuttal Declaration of Dr. William Waite, para. 22. After carefully reviewing both positions, the court

---

**2.** Advanced Math CoProcessor Technical Specification. Affidavit of William Waite, Exhibit A.

**3.** These two elements are also found in claims 7 and 8. Thus, the court's finding with respect to infringement of claim 5 will also be applicable to claims 7 and 8.

agrees with Dr. Waite. Dr. Waite's interpretation of the term plurality is consistent with the ordinary, dictionary definition of the term.[4]

■ The fourth element in claim 5 of U.S. Reissue Letters Patent 33,629 provides: "an arithmetic unit to perform arithmetic operations on said information in said file format, said arithmetic unit being coupled to said fraction bus." Reissue Letters Patent 33,629, col. 27, lns. 18–20. The dispute at issue in this element centers, in essence, on two phrases. First, the parties dispute whether the phrase "in said file format" refers (1) to the performance of "arithmetic operations" as Smith contends; or (2) to the "said information" as Waite contends. Next, the parties dispute the meaning of the term "file format" as it is used in element four. After reviewing the affidavits and analysis of both Waite and Smith, the court agrees with the interpretations of Waite. Waite's analysis is both credible and persuasive.

Based on these findings, Intel has shown that the US83C87 coprocessor infringes on every element of claims 5, 7 and 8. Accordingly, Intel has made a clear showing of infringement by ULSI.

2. Validity

■ ULSI contends that the Palmer Patent is invalid because all of the claims of the reissued patent are obvious in light of the prior art, which was not considered by the Patent Office. ULSI argues that several papers prepared by Jerome Coonen[5] in connection with the draft floating point standard of the Institute of Electrical and Electronics Engineers, Inc. when read in combination with the "UNRAU article"[6] demonstrate the obviousness of all five claims of the Palmer Patent. The position of ULSI is again supported by its expert, Smith. Affidavit of Walstein Bennett Smith III, paras. 21–25.

A patent may be proved invalid for obviousness under 35 U.S.C. § 103. When such a challenge is made, the court addresses "whether 'the prior art made obvious the invention as a whole for which patentability is claimed.'" *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed.Cir.1991) (quoting *Hartness Int'l Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed.Cir.1987)). Rather than picking and choosing among the individual elements of prior art references to recreate the claimed invention, the court "look[s] for 'some teaching or suggestion in the references to support their use in the particular claimed combination.'" *Id.* (quoting *Smithkline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 887 (Fed.Cir.1988)).

Under the test set out in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the court examines four different factors in making its determination: (1) the scope and content of the prior art; (2) differences between the prior art and the claim(s) at issue; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations such as commercial success, failure of others, copying, and unexpected results. *Id.* at 17–18, 86 S.Ct. at 694. The key factor at issue here is the difference between the prior art and the claims at issue. Peter Kornerup, a professor at the University of Odense in Odense, Denmark, states that the term "stack of registers," as it is used in the Palmer Patent, was neither "proposed, implemented or suggested" in any product or proposal pri-

**4.** Webster's Third New International Dictionary (1981) defines the term plural as relating to or consisting of or containing more than one. *Id.* at 1745. "Plurality" is the state of being plural. *Id.*

**5.** H. Stone, et al., Draft on a Floating–Point Standard from Discussions with H. Stone, W. Kahan, and J. Coonen (April 24, 1978) (Declaration of Joy A. Kruse, Exhibit 7); J. Coonen, Specifications for a Proposed Standard for Floating–Point Arithmetic (May 8, 1978) (Decla-

ration of Joy A. Kruse, Exhibit 8); Jerome T. Coonen, Specifications for a Proposed Standard for Floating Point Arithmetic (June 26, 1978) (Declaration of Joy A. Kruse, Exhibit 9).

**6.** Bruce D. Shriver & Peter Kornerup, Paper "The UNRAU: A Unified Representation Arithmetic Unit" Presented to the Computer Arithmetic Symposium at Southern Methodist University (November 19–20, 1975) (Declaration of Joy A. Kruse, Exhibit 26, pp. 5–10).

or to the filing of the Palmer Patent in 1980. Declaration of Jeffrey R. Chanin, Exhibit 7, para. 6 (Declaration of Peter Kornerup). Since he was the co-author of the UNRAU article, the opinion of Professor Kornerup is particularly persuasive. Moreover, Professor Kornerup's interpretation is supported by Waite. Rebuttal Declaration of Dr. William Waite, paras. 74–76.

Obviousness " 'cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination.' ... And, 'teachings of references can be combined *only* if there is some suggestion or incentive to do so.' " *In re Fine*, 837 F.2d 1071, 1075 (Fed.Cir.1988) (quoting *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed.Cir. 1984) (emphasis in original)). Here, Professor Kornerup states that there was "no incentive ... to adapt or restrict the internal or external data formats of UNRAU to those described in the Coonen article." Declaration of Jeffrey R. Chanin, Exhibit 7, para. 11 (Declaration of Peter Kornerup). Based on the foregoing, the court concludes that Intel has made a clear showing that the Palmer Patent is not invalid due to obviousness.

**3. Enforceability**

**a.** *Inequitable Conduct*

■■■■ ULSI contends that the Palmer Patent is unenforceable because Intel engaged in inequitable conduct during the application for the Palmer Patent and in the reissue proceedings. Specifically, ULSI argues that Intel's patent attorney, Daniel L. Dawes, withheld material prior art and submitted false and misleading declarations and statements to the Patent Office.

A patent may be held unenforceable upon a showing that the applicant engaged in inequitable conduct. When faced with such a contention, the court begins with two questions: first, do "the withheld references satisfy a threshold level of materiality[?]," *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1439 (Fed.Cir.1991); and second, does "the appli-

cant's conduct satisf[y] a threshold showing of intent to mislead[?]" *Id.* If these two threshold inquiries are satisfied, the court then balances materiality and intent. *Id.*

While ULSI argues that the conduct of Intel before the Patent Office raises a "natural inference" of an intent to deceive, in fact, there is no direct evidence in the record that Intel or Dawes acted with the requisite culpable intent. Dawes apparently considered the prior art at issue to be theoretical and abstract and thus not helpful to him in preparing Intel's application for the Palmer Patent. Intel's Reply Memorandum, p. 29, lns. 1–15. Even if this conclusion could be considered grossly negligent, it would not alone compel a finding of intent to deceive. *Halliburton Co.*, 925 F.2d at 1443. Without something in the record indicating an intent to deceive, the threshold inquiry is not met. The court concludes that Intel has made a clear showing that it did not engage in inequitable conduct before the Patent Office.

**b.** *License Defense*

■■■ ULSI's US83C87 coprocessors are manufactured, in part, by Hewlett–Packard through a foundry services agreement with ULSI. Declaration of Jeffrey R. Chanin, Exhibit 9 (Affidavit of Richard R. Duncombe). Pursuant to this agreement, ULSI provides Hewlett–Packard with a magnetic design tape which contains the physical layout and design for the US83C87 coprocessor. *Id.* at para. 8. After receiving the magnetic design tape, Hewlett–Packard creates a quartz glass plate known as a "reticle" onto which a machine writes a pattern according to the data supplied by the magnetic design tape. *Id.* at para. 9. After creating the reticle, Hewlett–Packard imprints its image on blank silicon wafers. *Id.* at para. 10. As a result, a pattern is created on the wafers which embodies the information provided by the magnetic design tape. *Id.* When this process is complete, Hewlett–Packard inspects and tests the wafers and then ships them to ULSI. *Id.* para. 11.

On January 10, 1983, Intel and Hewlett–Packard entered into a cross-license agree-

ment (the "Intel/Hewlett–Packard agreement"), which provides, in part:

1. [HEWLETT–PACKARD] hereby grants INTEL an irrevocable, retroactive, nonexclusive, world-wide, royalty-free license under all patents and patent applications owned and controlled by [HEWLETT–PACKARD] having a first effective filing date prior to January 1, 2000, said license to be effective until the expiration of said patents.

2. INTEL hereby grants [HEWLETT–PACKARD] an irrevocable, retroactive, nonexclusive, world-wide, royalty-free license under all patents and patent applications owned and controlled by INTEL having a first effective filing date prior to January 1, 2000, said license to be effective until the expiration of said patents.

Declaration of Joy A. Kruse, Exhibit 28, p. 2.

On September 17, 1991, the United States Court of Appeals for the Federal Circuit issued an opinion which has prompted the parties to file a total of four additional briefs with regard to the license defense of ULSI. In *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821 (Fed.Cir.1991), Intel sought to prohibit Atmel Corporation (Atmel) (and other parties) from importing into the United States certain Erasable Programmable Read–Only Memories (EPROMs) which allegedly violated one or more of Intel's United States patents. The United States International Trade Commission agreed with a number of Intel's contentions and ordered Atmel to cease and desist its activities with regards to the EPROMs which were found to be infringing. On appeal, Atmel argued, among other things, that its EPROMs were noninfringing because they were manufactured by Sanyo Electric Co. Ltd. and Tokyo Sanyo Electric Co., Ltd. (collectively, Sanyo) under Sanyo's cross-licensing agreement with Intel. The Court of Appeals rejected Atmel's contention, finding its interpretation of the cross-licensing agreement overly broad. *Intel Corp.*, 946 F.2d at 827–28. The court's holding as to this issue is not disputed; however, the parties contest the significance of the following paragraph:

If the Intel/Sanyo agreement permits Sanyo to act as a foundry for another company for products covered by the Intel patents, the purchaser of those licensed products from Sanyo would be free to use and/or resell the products. Such further use and sale is beyond the reach of the patent statutes. *See United States v. Univis Lens Co.*, 316 U.S. 241, 250–52, [62 S.Ct. 1088, 1093–94, 86 L.Ed. 1408] (1942) (the first vending of any article manufactured under a patent puts the article beyond the reach of the patent).

*Intel Corp.*, 946 F.2d at 826.

ULSI contends that this paragraph "completely disposes of Intel's contentions regarding ULSI's license defense." Defendant's Memorandum of Supplemental Authority, p. 3, lns. 22–23. ULSI contends that Hewlett–Packard acts as a foundry for ULSI, and, therefore, the sale of the wafer for the US83C87 coprocessor is a "first sale" under patent law. Since the US83C87 coprocessor is manufactured under the Intel/Hewlett–Packard agreement, ULSI argues that the US83C87 coprocessor is beyond the reach of the Palmer Patent.

Intel contends that Hewlett–Packard does not sell the wafer for the US83C87 coprocessor to ULSI. Rather, Intel argues that Hewlett–Packard provides a service to ULSI, and because there is no "sale" by Hewlett–Packard to ULSI, there can be no exhaustion of patent rights. Intel further argues that the court's statement in *Intel Corp.* was dicta.

In examining the breadth of the Intel/Hewlett–Packard agreement, it is clear that neither Intel nor Hewlett–Packard intended their agreement to be so broad as to grant the other party the power to sublicense any patent granted under the Intel/Hewlett–Packard agreement. *See* Declaration of Jeffrey R. Chanin, Exhibit 13, para. 5 (Affidavit of Stephen P. Fox). Since both Intel and Hewlett–Packard have attached the same meaning to their contract, the court will interpret the Intel/Hewlett–Packard agreement in accord-

ance with that meaning. *See* Restatement (Second) of Contracts § 201(a) (1979). Accordingly, the court concludes that Intel has shown that the Intel/Hewlett–Packard agreement does not provide ULSI with a license defense to this action.[7]

### 4. Conclusion as to Intel's Likelihood of Success on the Merits

■ As the party seeking injunctive relief, Intel "carries the burden of showing the likelihood of success on the merits with respect to the [Palmer Patent's] validity, enforceability, and infringement." *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed.Cir.1991). While its position could change following a trial on the merits, at this stage of the proceedings, the court finds that Intel has made a clear showing that its patent is valid and that it is being infringed. Further, Intel has also made a clear showing that the Palmer Patent is enforceable. Accordingly, Intel has demonstrated a likelihood of success on the merits.

### B. *Irreparable Harm*

■ A court may presume irreparable harm upon a clear showing of patent validity and infringement. *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1580–81 (Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). "This presumption derives in part from the finite term of the patent grant ... [since t]he opportunity to practice an invention during the notoriously lengthy course of patent litigation may itself tempt infringers." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987). Moreover, "[t]he nature of the patent grant ... weighs against holding that monetary

damages will always suffice to make the patentee whole, for the principal value of a patent is its statutory right to exclude." [8] *Id.* The court has found that Intel has demonstrated a clear showing that the Palmer Patent is valid and infringed. Accordingly, irreparable harm is presumed.

Even if irreparable harm is presumed, this presumption may be overcome by the party opposing the injunction. *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1272 (Fed.Cir.1985). If the alleged infringer brings forth "clear evidence" showing that the patentee would not actually suffer irreparable injury, the preliminary injunction motion may be denied. *Id.* Although ULSI contends that this presumption is overcome by Intel's delay in seeking the injunction, the court finds no evidence that Intel unreasonably delayed in seeking the injunction.

### C. *Balance of Hardship*

■ Even when irreparable injury is presumed and not rebutted, the court must still consider the balance of hardships. *H.H. Robertson Co.*, 820 F.2d at 390.

The hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating. On the other hand, the hardship on a patentee denied an injunction after showing a strong likelihood of success on validity and infringement consists in a frequently and equally serious delay in the exercise of his limited-in-time property right to exclude. Neither hardship can be controlling in all cases. Because the court must balance the hardships, at least in part in light of its estimate of what is likely to happen at

---

**7.** Although the court need not reach this issue, the court also finds support for Intel's contention that its patent rights could not be extinguished by Hewlett–Packard's foundry services for ULSI because no *sale* took place. Pursuant to its agreement with ULSI, Hewlett–Packard was to provide foundry *services* for the US83C87 coprocessor. Hewlett–Packard never assumed any ownership rights in any ULSI product and had no right to use or sell any ULSI product. Declaration of Jeffrey R. Chanin, Exhibit 9, para. 13 (Affidavit of Richard R. Duncombe); Declaration of Jeffrey R. Chanin, Exhibit 13,

para. 7 (Affidavit of Stephen P. Fox). Therefore, no sale ever took place.

**8.** There is, however, no presumption that monetary damages will be inadequate in connection with a motion for a preliminary injunction. *Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed.Cir.1991). The patentee should proffer some evidence, such as the insolvency of the infringer, or the inadequacy of the legal remedy, that money damages will be deficient. *See id.* at 871–72.

trial, it must consider the movant's showing of likelihood of success. Yet, a court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in the light of all the factors so requires.

*Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 683 (Fed.Cir.1990).

Intel contends that the balance of hardships counsels toward granting the injunction. Intel argues that ULSI will not be forced out of business if enjoined from infringing the Palmer Patent; instead, ULSI can perform a minor modification to the US83C87 so that it does not infringe just as other companies have done.

The court does not agree that the balance of hardships favors Intel. Richard Petrarca, Director of Finance for ULSI, states that the US83C87 is ULSI's only product, and, if enjoined from selling the US83C87 coprocessor, ULSI "would in all likelihood be forced out of business." Declaration of Richard W. Petrarca, para. 5.

## D. *Public Interest*

The public interest favors the protection of patent rights. However, there is also an interest in a company's right to continue to operate, at least until a claim is resolved by a trial on the merits. Therefore, the court concludes that this factor favors neither party.

## CONCLUSION

After weighing the likelihood of success on the merits and the irreparable harm (both of which favor Intel) with the balance of hardships (which favors ULSI), the court concludes that the motion for a preliminary injunction should be granted. The court recognizes the impact an injunction will have on ULSI. This impact, however, is not sufficient to overcome the other factors.

The motion of Intel for a preliminary injunction (# 4) is granted.