**LINDEMANN MASCHINENFABRIK
GmbH, Plaintiff–Appellant,**

v.

**AMERICAN HOIST & DERRICK COM-
PANY, HARRIS PRESS & SHEAR DI-
VISION and Commercial Metals Com-
pany, Defendants–Appellees.**

No. 89–1201.

United States Court of Appeals,
Federal Circuit.

Feb. 12, 1990.

David Toren, Toren, McGeady & Associates, P.C., New York City, argued for plaintiff-appellant. With him on the brief were Samuel B. Mayer and Peter J. Toren, New York City.

William B. Farney, Arnold, White & Durkee, of Houston, Tex., argued for defendants-appellees. With him on the brief was Edward W. Goldstein, Houston, Tex.

Before MARKEY, Chief Judge, COWEN, Senior Circuit Judge, and NIES, Circuit Judge.

MARKEY, Chief Judge.

Lindemann Maschinenfabrik GmbH (Lindemann) appeals from a judgment of the United States District Court for the Southern District of Texas, (via Magistrate Brown), No. H–80–2333 (November 18, 1988), awarding Lindemann damages of $10,000; refusing to find willful the infringement of American Hoist and Derrick Company, Harris Press and Shear Division, or Commercial Metals Company (collectively AmHoist); and denying Lindemann attorney fees under 35 U.S.C. § 285 (1982). We affirm the judgment in all respects.

## BACKGROUND

We do not here discuss U.S. Patent No. 3,945,315 ('315) or the involved technology, which we fully explicated in our opinion reversing the judgment of invalidity and remanding the case for a finding on infringement and other proceedings consistent with that opinion. *See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1464,

221 USPQ 481, 490 (Fed.Cir.1984) (*Lindemann I*).

### Proceedings on Remand

Following remand, the district court held an evidentiary hearing, at the beginning of which AmHoist stipulated to including, over Lindemann's objection, the willfulness issue. Lindemann's sole source of evidence on the damages amount came from its expert, patent attorney Paul M. Enlow (Enlow). Enlow gave his opinion that a reasonable royalty would be 75%–85% of AmHoist's targeted gross profit, yielding a royalty rate of 20%–25% of the net selling price of the entire machine and sales of spare parts, resulting in a damage award of $179,844–$224,805. AmHoist's expert, Sidney Alpert, gave his opinion that a reasonable royalty should be based on the anticipated profit on the patented and optional split ram feature, rather than on the entire machine. He concluded that Lindemann's damages should total $3,000 for the two sales of machines with infringing rams.

The trial judge, Judge Sterling, died before rendering judgment. With consent of the parties and court designation, United States Magistrate Karen K. Brown conducted all further proceedings. *See* 28 U.S.C. § 636(c) (1982).

On September 15, 1988, Magistrate Brown entered an order "permanently enjoin[ing] Defendant AmHoist from further infringement"; granting Lindemann "nominal" damages of $10,000; and, finding the case to be exceptional, awarding Lindemann attorney fees, costs, and prejudgment interest. That order did not discuss willfulness or enhanced damages under 35 U.S.C. § 284 (1982).

The bulk of that order concerned a reasonable royalty calculation. Having determined that neither party had presented evidence requiring adoption of its recommended amount of damages, the magistrate stated:

[I]t is the opinion of this Court, that it can do no more than render substantial justice. Plaintiff's damages calculations

are based on the infringer's anticipated profits which bear no relationship to the actual profits. Alternatively, Defendant's damage calculations are based on the anticipated net profits on the sale of the split ram as an option.... This presents an unacceptable solution given the existing case law. Therefore, this court awards to Plaintiff for infringement of its '315 patent, nominal damages in the amount of $10,000. [Footnote & citation omitted.]

In that order the magistrate gave Lindemann ten days to submit a "proposed judgment which incorporates these findings." AmHoist moved for reconsideration and substitute findings. Lindemann made no substantive response to that motion. On November 18, 1988, the magistrate granted AmHoist's motion, ordering that the portion of the earlier order "designating this an exceptional case ... and awarding attorney's fees is hereby withdrawn." The final judgment: (1) held the '315 patent valid and infringed; (2) permanently enjoined AmHoist from infringement; (3) awarded $10,000 in damages; (4) said Lindemann failed to show "that [AmHoist's] infringement was willful and failed to overcome [AmHoist's] showing of a *bona fide* belief in the invalidity of [the '315 patent]"; and (5) said Lindemann failed to show "that this was an exceptional case within the meaning of 35 U.S.C. § 285, or that the Court should otherwise award attorney fees."

### ISSUES

I. Whether the magistrate's award is contrary to 35 U.S.C. § 284.

II. Whether the magistrate's finding of nonwillfulness was clearly erroneous.

III. Whether the magistrate's finding that this is not an exceptional case under 35 U.S.C. § 285 was clearly erroneous.

### OPINION

#### Introduction

Once again the court's patience is sorely tried by an inability or refusal of an appellant to understand the purpose and rules governing the appellate process. Having utterly failed to prove its case for damages at trial, Lindemann attempts to retry that case here, asking this court first to accept its one-sided version of the evidence and its selected snippets of testimony and then, on that basis, to forego remand and order an award more to Lindemann's liking. Taking the charitable view that Lindemann's conduct here may be the result of invincible ignorance, and recognizing that Lindemann appeared to prevail at one point, we decline to impose a sanction under Rule 38, Fed.R. App.P. Nonetheless, we remind that one does not persuade by insulting the intelligence of the persuadees.

It is sufficient to cite but one example of Lindemann's intelligence-insulting tactics here, i.e., one of the many instances in which it twisted this court's opinion language in *Lindemann I.* Because Lindemann never sold its invention in the United States and AmHoist sold only two $16,000 split-ram optional features soon abandoned by the purchasers and by AmHoist, this court said:

> The record does not reflect the rationale underlying a vigorously fought lawsuit and its accompanying expense in the light of two sales and both purchasers' cessation of use of the invention.

730 F.2d 1452, 1463 n. 8.

Lindemann's brief turns the above quote on its head, saying this "vexatious and unjustified litigation, remarked upon by this Court in its opinion on the prior appeal," was "occasioned by AmHoist's tenacity in persisting with a defense of non-infringement...." To found an argument on an expectation that this court will forget which side brought suit is to exceed the bounds of advocacy.

To list each of the many statements in Lindemann's brief that are either unsupported or contradicted by the record would unduly lengthen this opinion. With those statements Lindemann is arguing a different case from that presented at the trial level. That Lindemann found such statements necessary should have told it that there were no proper grounds for reversal

and that in filing this appeal it was walking on the razor's edge of frivolity.[1]

## Introduction

### I. Damages

The subject of damages is dual-sided, encompassing the questions of whether there are *any* damages, and, if so, what should be the amount. The former is a question of fact, answerable by "yes" or "no" and leaving no room for inference, speculation, estimation, or discretion. The latter is subject to those exercises and may on occasion be determinable only through an effort of the court, as here, "to do substantial justice." As was said in *Story Parchment Company v. Paterson Parchment Paper Company*, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931):

> Nor can we accept the view of that court that the verdict of the jury, in so far as it included damages for the first item, cannot stand because it was based upon mere speculation and conjecture. This characterization of the basis for the verdict is unwarranted. It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.

▮▮▮ In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated. 5 D. Chisum, *Patents* § 20.03[3] at 20–142 (1986); *see Zegers v. Zegers, Inc.*, 458 F.2d 726, 729–30, 173 USPQ 385, 387–88 (7th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 131, 34 L.Ed.2d 132 (1972); *cf. Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326, 5 USPQ2d 1255, 1260 (Fed.Cir.1987). The patentee must then prove the amount of damage. When lost profits are the measure, the amount is normally provable by the facts in evidence or as a factual inference from the evidence.[2] When a "reasonable royalty" is the measure, the amount may again be considered a factual inference from the evidence, yet there is room for exercise of a common-sense estimation of what the evidence shows would be a "reasonable" award. One challenging only the court's finding as to amount of damages awarded under the "reasonable royalty" provision of § 284, therefore, must show that the award is, in view of all the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonable royalty. Here Lindemann, who bore the burden and yet failed to adduce evidence dictating a particular amount, left the magistrate with the widest range of choice. Indeed, the paucity of Lindemann's evidence makes its challenge to the amount of the award difficult to understand when an award far less than $10,000 would have been supported by the evidence.

Lindemann emphasizes that the 1952 Act sets a reasonable royalty as the floor below which damages can not go, *see Del Mar*, 836 F.2d at 1326, 5 USPQ2d at 1260; *Seattle Box Co. v. Industrial Crating & Packing Inc.*, 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir.1985), but Lindemann forgets that it failed to carry its burden of proving that its proposed royalty would be reasonable.

Disregarding this court's oft-repeated caution that judgments, not words, are appealable, *see, e.g., FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 524, 5 USPQ2d 1272, 1274 (Fed.Cir.1987) (citing *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530,

---

1. In the words of Elihu Root, "[a]bout half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop." *McCandless v. Great Atl. & Pac. Tea Co.*, 697 F.2d 198, 201–02 (7th Cir.1983).

2. Because Lindemann did not compete in the sale of its invention in the United States, it did not, as it could not, seek damages on the basis of lost profits.

1540, 218 USPQ 871, 880 (Fed.Cir.1983)), Lindemann founds this appeal primarily on the magistrate's use of "nominal", and, from *the presence of that word alone,* argues that the award was out of "conformity" with 35 U.S.C. § 284's mandate that damages awarded be "in no event less than a reasonable royalty...." Lindemann's reliance on the word "nominal" is the more surprising in light of this court's statement in *Lindemann I* that it "reviews judgments, not the rhetoric in opinions." 730 F.2d at 1458, 221 USPQ at 485. *See also Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718, 223 USPQ 1264, 1272 (Fed.Cir.1984) (this court reviews "final decisions, not passing comments").

Lindemann's exclusive focus on the word "nominal" as indicating that the magistrate disregarded § 284 is but another intelligence-insulting tactic. The magistrate cited § 284 as its guidepost and *five times* referred to its duty to award no less than a reasonable royalty.

Though the label "nominal" may have been inapt, in context it is clear that the magistrate used it to indicate merely that on the evidence it presented Lindemann was entitled to far less than the amount it demanded. *See, e.g., Union Carbide Corp. v. Graver Tank & Mfg. Co.,* 243 F.Supp. 358, 363, 145 USPQ 446, 450, (N.D.Ind. 1963), *aff'd in pertinent part, rev'd in part,* 345 F.2d 409, 411, 145 USPQ 240, 241 (7th Cir.1965). In all events, the mere use of the label would not and could not possibly constitute reversible error.[3]

■ As above indicated, the statute obviates the need to show the fact of damage when infringement is admitted or proven, but that does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount award-ed by the court is not "reasonable" and therefore contravenes section 284. *See Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1519, 220 USPQ 929, 941 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984) (in lost profits context: "One who fails to submit evidence in support of a position cannot be heard on appeal to complain that the trial court failed to find facts upholding that position"); *Devex Corp. v. General Motors Corp.,* 667 F.2d 347, 363, 212 USPQ 643, 657 (3rd Cir.1981) (affirming award of zero damages for lack of evidence and saying: "The statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."), *aff'd on other grounds,* 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983).[4]

■ The record created at trial convinces us that the magistrate correctly evaluated the evidence as totally insufficient to support a royalty rate yielding more than $10,000 for AmHoist's sale of the two machines with infringing rams. Lindemann admits that it "presented its evidence on damages solely" through its one witness, patent attorney Enlow. Mr. Enlow gave his opinion that a reasonable royalty would be 20%–25% of the sale price of the entire machine. Lindemann implies but does not, as it cannot, argue that the magistrate was bound to accept that opinion. Indeed, the record reflects fully adequate bases for the magistrate's rejection of that opinion. As brought out on cross-examination, Enlow's opinion was based on a nonexistent or at best woefully incomplete understanding of the market and on an estimate of anticipated profits that bore no relation to actual profits, Enlow having no knowledge of the latter. Enlow stated that courts do not

---

**3.** *Middleton v. Wiley,* 195 F.2d 844, 93 USPQ 77 (8th Cir.1952) ("nominal" damages of $1), cited by Lindemann, is clearly distinguishable on the difference between $1 and $10,000, particularly where, as here, the award is more than three times the damages proposed by the defendant.

**4.** Foregoing a cross-appeal designed to reduce the award by $7,000, AmHoist thereby admirably served its own true interest and that of the court. Though AmHoist's brief says Lindemann's failure of proof should have resulted in zero damages, we need decide only whether the magistrate awarded an amount that was too low. As indicated in the text, she did not.

consider actual net profits "in these [hypothetical negotiation] situations." That was said in disregard of *Trans–World Mfg. Co. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1568, 224 USPQ 259, 269 (Fed.Cir.1984). Enlow's calculation began with a 30% anticipated gross profit (though Lindemann's brief admits at one point that AmHoist's anticipated net profit was 15%). *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.,* 788 F.2d 1554, 1557, 229 USPQ 431, 433 (Fed. Cir.1986) (approving royalty based on expected net profit). Enlow's opinion that AmHoist "would agree to pay a royalty in excess of what it expected to make in profit" was, in light of all the evidence in this case, absurd. *See Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1081, 219 USPQ 679, 684–85 (Fed.Cir.1983) (approving royalty that would leave reasonable profit). In view of the sparse and totally inadequate record Lindemann created at trial, we cannot say that Lindemann proved entitlement to an award greater than $10,-000.

## II. *Willfulness*

■ Lindemann says the magistrate "had no authority" to find nonwillfulness because "the view of this Court on willfulness [in *Lindemann I*] became the law of the case." That assertion is wholly without foundation.[5] This court expressed in *Lindemann I* no view whatever on infringement, let alone on willfulness. On the contrary, this court expressly declined Lindemann's request that it "affirm" the district court's "decision" on infringement, pointing out that there was neither a finding nor a judgment on infringement and remanding the case for determination of that issue. 730 F.2d at 1463–64, 221 USPQ at 489.

■ Similarly without merit is Lindemann's argument that the magistrate's finding of nonwillfulness is clearly erroneous. That Magistrate Brown withdrew her initial view on willfulness before entering final judgment gives Lindemann no ground for complaint. *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1551, 5 USPQ2d 1779, 1784 (Fed.Cir.) *cert. denied,* —— U.S. ——, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). The findings of two judges that AmHoist had a good faith belief that the patent was invalid and the effect of Judge Sterling's initial holding of invalidity are not overcome by Lindemann's quoting of parts of counsel's letters out of context. Lindemann's appellate tactic of virtually ignoring the extensive evidence supporting the magistrate's finding cannot possibly persuade us that it submitted the required "clear and convincing" evidence of willfulness; nor does Lindemann evince in us, from a review of the evidence, a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

## III. *Exceptional Case*

■ Willfulness being absent, we need only address Lindemann's argument that the magistrate committed clear error when she failed to find, on the basis of AmHoist's subsequent stipulation, that AmHoist had pursued its noninfringement defense "vexatiously and frivolously" at trial. The simple and complete answer, recognized by the magistrate, is that the stipulation of infringement on remand does not *ipso facto* establish that AmHoist's earlier litigation of the issue was either vexatious or frivolous. On the contrary, AmHoist's reduction of the issues by its stipulation was a praiseworthy step, beneficial to the courts and the parties.[6]

Our review of the record reveals that the magistrate correctly determined, as did Judge Sterling before her, that Lindemann was not entitled to attorney fees under the exceptional case provision of 35 U.S.C. § 285.

---

5. Lindemann founds the assertion on one phrase in this court's reference to Lindemann's argument and on its attempted conversion of that phrase into a "determination" and an "issue decided" by this court.

6. We similarly find no merit in Lindemann's cryptic, unsupported assertion that AmHoist's motion for reconsideration was untimely.

**CONCLUSION**

The judgment is affirmed.

AFFIRMED.