**SMITHKLINE DIAGNOSTICS, INC.,**
Plaintiff–Appellant,

v.

**HELENA LABORATORIES CORPORA-**
**TION, Defendant/Cross–Appellant.**

Nos. 90–1002, 90–1021.

United States Court of Appeals,
Federal Circuit.

Feb. 26, 1991.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, of Washington, D.C., argued for plaintiff-appellant. With him on the brief was Allen M. Sokal.

Jerold I. Schneider, Spencer & Frank, of Washington, D.C., argued for defendant/cross-appellant. With him on the brief was John W. Schneller.

Before NIES, Chief Judge,* MILLER, Senior Circuit Judge, and GEORGE, District Judge.**

NIES, Chief Judge.

SmithKline Diagnostics, Inc. (SKD) appeals the judgment of the United States District Court for the Eastern District of Texas, *SmithKline Diagnostics Inc. v. Helena Laboratories Corp.*, 12 USPQ2d 1375 (E.D.Tex.1989), awarding SKD $625,-461.06 against Helena Laboratories Corporation to compensate for Helena's infringement of SKD's U.S. Patent No. 4,365,970 (the '970 patent). The award was based upon a 25% royalty on the selling price of Helena's infringing product plus interest. SKD appeals, urging that the district court wrongly denied SKD a greater amount calculated on the basis of SKD's lost profits

and also wrongly denied costs to SKD. Helena cross-appeals, asserting that the amount of the award bears no rational relationship to the evidence in the record and seeks to have it based on 3% as a reasonable royalty. We affirm.

## I

## BACKGROUND

SKD owns the '970 patent for a specimen test slide and method for detecting occult (hidden or invisible) blood in fecal matter. The invention is marketed under the trademark HEMOCCULT, and it is useful in the early diagnosis of a variety of gastroenterological diseases including colorectal cancer. Helena markets various specimen test slides under the trademark COLOSCREEN. Only Helena's COLOSCREEN specimen test slide containing hemoglobin has been held to infringe SKD's '970 patent. *See SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 891, 8 USPQ2d 1468, 1479 (Fed.Cir.1988) (containing a thorough discussion of the '970 patent and its underlying technology). In this appeal we are called upon to review the amount awarded by the district court as damages upon the remand of the case following our prior decision.

SKD sought to have damages calculated on the basis of its lost profits. The court concluded, however, that SKD failed to prove its damages under this theory. The district court found that SKD did not show "even a slight or reasonable possibility, let alone a reasonable probability, that it would have made the sales of [HEMOCCULT slides] but for the sales by Helena." *SKD*, 12 USPQ2d at 1380. In reaching that conclusion the district court found that: (1) acceptable, noninfringing substitutes existed for SKD's HEMOCCULT slide; and (2) SKD did not establish that it had the manufacturing capacity or had access to the manufacturing capacity needed to cover the increased demand. Further, even assuming SKD would have made Hel-

---

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

** Judge Lloyd D. George, United States District Court for the District of Nevada, sitting by designation.

ena's sales, the district court rejected as incredible SKD's proof as to the amount of profit it would have made, absent Helena's infringement.

In view of SKD's failure to prove lost profit damages, the district court turned to ascertainment of a reasonable royalty for the infringement. In this connection, the court considered the evidence that SKD was unwilling to license its patent; that Helena competed with lower priced competitors; Helena's profit, market share and sales strategy; the presence of acceptable, noninfringing substitutes; other royalty rates paid by Helena; and testimony of witnesses for each party as to a reasonable royalty. The court expressed its uncertainty as to whether it was restricted to fixing damages based on the evidence proffered by one of the parties as to a specific percentage asserted to be a reasonable royalty, or whether it was free to exercise its own independent judgment and to determine a reasonable royalty based on the court's evaluation of all of the evidence. The court solved this problem by making findings on each basis. The district court stated that, if forced to choose between the precise figures, Helena's proof of 3% as a reasonable royalty was more credible than SKD's proof of 48%. Specifically it stated:

> The Court rejects Mr. Kay's conclusion of one-half SKD's lost profit, which amounts to a royalty of about 48% of Helena's selling price, as unreasonable. Helena offered expert testimony, through former Commissioner Schuyler, based on the two existing Helena licenses, that a reasonably [sic] royalty in this case would not exceed 3% of the selling price of Helena's slides. The Court credits the testimony of former Commissioner Schuyler....

> \* \* \* \* \* \*

> Fifty percent of SKD's profit [*i.e.*, 48% of Helena's price], the "reasonable royalty" theory urged by SKD, is not credible as a reasonable royalty because of all the factors considered by the Court and is expressly rejected. Considering all the evidence as a whole, that amount would be a windfall to SKD and a penalty to Helena, and it is too large to reasonably compensate the patent owner for its proven damages.

*SKD*, 12 USPQ2d at 1379, 1381. The district court went on to find alternatively:

> [I]f the Court is entitled to exercise its own independent judgment, based on the evidence as a whole, then the Court finds and concludes that a damage award adequate to compensate SKD for the infringement is 25% of Helena's selling price.

*SKD*, 12 USPQ2d at 1381. Concluding ultimately that it was not restricted to selecting either of the specific figures proffered by the parties, the district court entered a damage award of $395,800.25 based on 25% of Helena's total sales of infringing goods plus prejudgment interest for a total of $625,461.06. SKD now challenges the district court's rejection of its proof of damages based on a claim of lost profits, whereas Helena maintains that the court erred in awarding damages based on 25% rather than 3% of Helena's sales. SKD also seeks to overturn the denial of costs.

## II

### ISSUES

1. Whether the district court's findings that SKD failed to establish the factors supporting lost profits as the measure of its damages are clearly erroneous.

2. Whether the district court was restricted to 3% as a reasonable royalty.

3. Whether the district court's award calculated on a 25% royalty was insufficiently explained or is clearly erroneous.

4. Whether the district court abused its discretion in denying SKD costs.

## III

### STANDARD OF REVIEW

Section 284 of the 1952 Patent Act provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer...." 35 U.S.C. § 284

(1988). Through section 284, "Congress sought to ensure that the patent owner would in fact receive full compensation for 'any damages' he suffered as a result of the infringement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55, 103 S.Ct. 2058, 2062, 76 L.Ed.2d 211, 217 USPQ 1185, 1188 (1983).

■ Damages is the amount of loss to a patentee. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505, 84 S.Ct. 1526, 1542, 12 L.Ed.2d 457, 141 USPQ 681, 693 (1964) (Brennan plurality); *Duplate Corp. v. Triplex Safety Glass Co.*, 298 U.S. 448, 451, 56 S.Ct. 792, 793, 80 L.Ed. 1274 (1936). A patentee may seek to recover actual damages, usually, the amount of profits actually lost, or if unable to prove actual damages, the patentee is entitled to a reasonable royalty. *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574, 7 USPQ2d 1606, 1612 (Fed. Cir.1988); *see Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1112, 2 USPQ2d 1826, 1835 (Fed.Cir.1987); 5 D. Chisum, Patents § 20.03, at 20–71 (1990).[1]

We agree with the district court that the amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence. Thus, where the amount is fixed by the court, review is in accordance with the clearly erroneous standard of Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). However, certain subsidiary decisions underlying a damage theory are discretionary with the court, such as, the choice of an accounting method for determining profit margin, *see Hartness Int'l, Inc.*, 819 F.2d at 1112, 2 USPQ2d at 1835, or the methodology for arriving at a reasonable royalty, *see TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899, 229 USPQ 525, 527 (Fed.Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). Such decisions are, of course, reviewed under the abuse of discretion standard.[2]

1. The House Committee on Patents Report (adopted by the Senate) states with respect to the amendment adding the reasonable royalty provision to the prior statute (Section 4921 Revised Statutes):

> The object of the bill is to make the basis of recovery in patent-infringement suits general damages, that is, any damages the complainant can prove, not less than a reasonable royalty, together with interest from the time infringement occurred, rather than profits and damages.

35 U.S.C.A. § 70 (1946).

2. We have reviewed our precedent and find some confusing, if not conflicting, statements with respect to the nature of damage issues and the standard of review. *Compare Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1406, 13 USPQ2d 1871, 1874 (Fed.Cir.1990) ("amount is ... considered a factual inference from the evidence") *Central Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573, 1576, 220 USPQ 490, 492 (Fed.Cir. 1983) (was "award of lost profits ... clearly erroneous") *with Yarway Corp. v. Eur–Control USA, Inc.*, 775 F.2d 268, 275, 227 USPQ 352, 357 (Fed.Cir.1985) ("determination of damages under § 284 is left to the sound discretion of the trial judge"); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863, 226 USPQ 402, 409 (Fed.Cir.1985) ("amount or method of assessing

damages [reviewed for] an abuse of discretion").

The conflict/confusion has not been directly addressed in any prior decision. Faced with this situation, the panel has been able to reconcile some statements in prior decisions as indicated in the text. In this situation, the authority we have chosen to follow, namely, that damages are reviewed as a question of fact, accords with our earliest precedent. *See, e.g., Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1065, 219 USPQ 670, 677 (Fed.Cir.1983) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931) ("[w]hile damages may not be determined by mere speculation or guess, it will be enough if evidence shows the extent of the damages as a matter of just and reasonable inference [by the jury]")); *Central Soya Co., supra.* It is also in line with the rule of decision in other fields, *i.e.*, the amount of damages is a question of fact. *See, e.g., Felder v. United States*, 543 F.2d 657, 663 (9th Cir.1976) ("After a non-jury federal trial the standard of federal appellate review of a finding of fact such as the calculation of damages is the clearly erroneous standard of Rule 52(a)."); *see also* 5A Moore's Federal Practice ¶ 52.03[1], at 52–44 to 52–45 n. 26 (1990) (citing damages cases). There is no reason to adopt a special rule for patent cases. The damage award, thus, is reviewed under the

In this case, SKD sought actual damages based on lost profits. While it also had a fallback position for damages calculated on the basis of a "reasonable royalty," SKD used the same purported lost profit figure translated into a percent of Helena's sales to yield a reasonable royalty figure of 48%. The district court found SKD's profit figures incredible in either context. On appeal, SKD simplifies matters by merely appealing the issue of damages based on its purported actual loss of profits.

## IV

### LOST PROFITS DAMAGES

The district court found that SKD failed to establish by a preponderance of the evidence all of the requirements for a damage award based on SKD's lost profits. SKD contends that the district court committed clear error in making subsidiary as well as the ultimate findings. We cannot agree.

 SKD sought to prove damages under the standard set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156, 197 USPQ 726, 730 (6th Cir.1978), a permissible method by which a patent owner may prove damages based on lost profits. *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 141, 231 USPQ 644, 648 (Fed.Cir.1986). Under *Panduit*, a patentee must show that but for the infringing acts, the patent owner would have made the sales and would have made a certain level of profit. *Yar-*

*way Corp. v. Eur–Control USA, Inc.*, 775 F.2d 268, 275, 227 USPQ 352, 357 (Fed.Cir. 1985). Four elements must be proved: (1) a demand for the patented product,[3] (2) the absence of an acceptable, non-infringing substitute for the patented product, (3) the patent owner's manufacturing and marketing capability to exploit the demand for the patented product, and (4) the amount of profit the patent owner would have expected to make if the patent owner had made the infringer's sales. *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1555, 229 USPQ 431, 432 (Fed.Cir.1986) (citing *Panduit*, 575 F.2d at 1156, 197 USPQ at 730). Accordingly, a patentee is not entitled to lost profits if the patentee fails to establish any of the above requirements. Except for demand, the trial court found that SKD failed to prove each of the above requirements. SKD asserts that these findings are clearly erroneous. We are unpersuaded.

### Acceptable, Non–Infringing Substitutes

SKD's lost profits damage theory rests on the existence of a two-supplier market which fact (assuming evidence of capacity) would support an inference that SKD would have made the sales of Helena's hemoglobin-containing COLOSCREEN slide if Helena had not sold its infringing product. However, from the evidence concerning other products on the market submitted by both parties, the district court rejected SKD's theory stating:

clearly erroneous standard when fixed by the court and under the more restrictive substantial evidence standard when we review a denial of a motion for JNOV. *See SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 381–83, 218 USPQ 678, 690–93 (Fed.Cir.1983) (Nies, J., additional views) (Discussion of the difference in these standards of review).

More particularly, we reject an interpretation of our precedent holding that a judge has "discretion" to choose the "methodology" in determining an award to mean that the judge may choose between basing an award on "lost profits" damages or on a reasonable royalty. That is not choosing methodology. If a winning patentee seeks and proves lost profits, he is entitled to an award reflecting that amount. A judge, however, may choose between reasonable alternative accounting methods for determining the

amount of lost profits or may adopt in its discretion a reasonable way to determine the number of infringing units. Such subsidiary choices are left to the court's sound discretion under our precedent.

Enhancement of damages and attorney fee awards are expressly committed to the court's discretion. 35 U.S.C. §§ 284 and 285 (1988).

3. A substantial number of sales of the infringing slides by Helena is compelling evidence of a demand for SKD's patented HEMOCCULT slides. *See Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552, 222 USPQ 4, 6 (Fed.Cir.1984). Helena has not, and indeed could not, dispute the obvious demand for SKD's patented HEMOCCULT slide. Therefore, the first element of the *Panduit* lost profits test is not an issue before this court.

The Court, based on the totality of credible evidence, expressly finds that there were and are acceptable, non-infringing substitutes, and expressly rejects as inaccurate, not credible and against the great weight of the evidence, that this was only a two supplier market.

*SKD*, 12 USPQ2d at 1377. The district court first noted that Helena's noninfringing version of its COLOSCREEN slides was acceptable and was present in the market for part of the time period. It further noted that a third party, Propper Manufacturing, put out a noninfringing slide under the name SERACULT and found that Helena actually lost sales to Propper's SERACULT slide. It particularly credited testimony of Dr. Galen, a witness involved in purchasing for a major clinic, who testified that "they would consider [purchasing] either Seracult or Ames" [in place of Helena or SKD slides]. *Id.* at 1377.

SKD's evidence of a two supplier market was rejected by the district court:

The Court expressly rejects the testimony of Ostrow and Kay that there were not acceptable, non-infringing substitutes as pure conjecture and as totally contrary to the great weight of the evidence and the commercial realities of the marketplace and not credible. Ostrow had no knowledge of marketing. Furthermore, SKD did not even offer a VIP style of slide, which Helena offered, nor the external "tube" controls which Helena included with all its slides. SKD has not demonstrated even a slight possibility, let alone a reasonable probability, that it would have made sales of [HEMOCCULT] slides but for the [COLOSCREEN] sales by Helena.

*Id.* SKD argues in effect that the noninfringing products lacked one or more features of the patented invention and, therefore, would not be deemed part of the market. However, by definition, noninfringing products do not represent an embodiment of the invention. Thus, the district court properly considered the realities of the marketplace in connection with an assertion that "but for" the infringing activities, the patent owner would have made

the sales. *See Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1579, 220 USPQ 490, 494 (Fed.Cir.1983) (Infringement or noninfringement findings *not* necessary to finding of acceptable substitutes). It was the patent owner's burden to prove it *actually* lost sales or that at least such inference is reasonable from all of the evidence. That is the essence of a lost profits damage award. If purchasers are motivated to purchase because of particular features of a product available only from the patent owner and infringers, products without such features would obviously not be *acceptable* noninfringing substitutes. *TWM Corp.*, 789 F.2d at 901–02, 229 USPQ at 529. On the other hand, if the realities of the market are that others would likely have captured sales made by the infringer, despite a difference in the products, it follows that the "but for" test is not met. The district court found the latter was the market situation here. That finding is not based on a wrong understanding of the legal standard. Further, SKD has not persuaded this court that the district court improperly assessed the credibility of SKD's witnesses or that its finding of acceptable substitutes is clearly erroneous. *See Central Soya*, 723 F.2d at 1579, 220 USPQ at 494.

Alternatively, SKD argues that if there are acceptable, noninfringing substitutes, such sales were so insignificant that, as a matter of law, the existence of alternate third party products does not defeat the reality of a two party market. However, the district court was not convinced by SKD's view of its market share:

SKD contended that it had 90% share of the professional market, the mass screening or physician portions of the market, [by] relying on the IMS American audit, but this audit does not include any portion of over-the-counter market, nor does it include, on a consistent basis, products of all competitors. *This audit is entitled to very little weight.*

*SmithKline*, 12 USPQ2d at 1377 (emphasis added). SKD has not met its burden of proving that these findings are clearly erroneous. Accordingly, SKD's *de minimis* argument also fails.

*Other Factors*

The district court further found that SKD failed to prove its manufacturing capacity and it found incredible SKD's proof of a 50% profit margin, thus finding that SKD failed to prove the third and fourth factors of the *Panduit* lost profits test. The district court's opinion fully discusses the evidentiary basis for its findings. *SKD*, 12 USPQ2d at 1376–79. It suffices to say here that, upon examination of the record, we are not left with a firm conviction that an error was committed in the district court's weighing of the evidence on these factors.[4]

For all of the above reasons, we affirm the district court's finding that SKD failed to prove by a preponderance of the evidence its entitlement to recover its lost profits as actual damages.

## V

## REASONABLE ROYALTY

Helena, on cross appeal, contends that there is no rational basis discernable from the record to justify the 25% royalty figure imposed by the court. Claiming that the court expressly found 3% to be a reasonable royalty, Helena urges that the court "abused its discretion" in awarding SKD an eight-fold increase to a 25% royalty as a damage award. According to Helena, although the court properly rejected SKD's proffered 48% reasonable royalty figure as unsupported by credible evidence, the court's award based on the 25% figure cannot be upheld because this figure was not specifically advocated by either party and, per Helena, was not found to be a reasonable royalty. In place of the damage award based on 25%, Helena asks this court to award SKD an amount based on 3% which, it asserts, is the only figure the district court found to be a reasonable royalty.

As an initial matter, we address Helena's argument that the district court did not make a finding that 25% was a reasonable royalty. This argument arises because of an amendment the district court made in its memorandum opinion. In setting out its findings of fact and conclusions of law, the district court originally specifically found that "a reasonable royalty is 25% of Helena's selling price." At Helena's urging, the court changed the language, "reasonable royalty", to "damage award adequate to compensate for the infringement." Helena attaches legal significance to the amendment. We do not.

Contrary to Helena's argument, the change does not leave only a finding that 3% was a reasonable royalty. The court found 3% a reasonable royalty *only if* the court were legally constrained to a particular royalty figure advanced by one of the parties. As will be explained, the factual determination of a reasonable royalty, however, need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party.[5] After freeing itself of that possible constraint, the court found a "reasonable royalty" to be 25% based on all of the credible evidence. That the court subsequently changed its opinion to state in a final part of its analysis that 25% was "a damage award adequate to compensate for the infringement" does not change the finding in substance. Having found that SKD had not proved *actual damages*, the court turned to the only alternative available, namely, the calculation of the statutorily provided "reasonable royalty."

■ In findings and conclusions 22–29 and conclusions VI–XII, the court analyzed the parties' evidence pertinent to what would amount to a reasonable royalty. *SKD*, 12 USPQ2d at 1378–79, 1380–81. In finding 29 and in conclusion XII, the court misspoke in characterizing "*25%*" itself as a "damage award." (It is, of course, no

---

4. SKD asserts that the court limited its analysis to the discount market. We do not so read its opinion. The court only considered this market "niche" another reason for rejecting the *amount* asserted as lost profits, in addition to inaccuracy in the figures themselves.

5. This is in contrast to a damage award based on an established royalty. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79, 219 USPQ 679, 682–83 (Fed.Cir.1983).

award at all but only the basis for calculation of the award.) That error does not detract from the court's overall analysis. *Cf. Hartness Int'l, Inc.,* 819 F.2d at 1112, 2 USPQ2d at 1835. No doubt the court meant to say that the *dollar amount* calculated on the basis of a royalty of 25% applied to Helena's sales was a damage award adequate to compensate for the infringement. A specific finding that the calculated amount is adequate to compensate for the infringement, while appropriate, is not essential since an amount based on a reasonable royalty is *ipso facto* deemed adequate under the statute, absent circumstances for enhancement under 35 U.S.C. § 284.

■ With respect to Helena's contention that the 25% royalty rate cannot be upheld because that figure was not specifically advocated by either party, we agree with the district court's ultimate conclusion that it was not restricted to selecting either the 48% or 3% figures advanced respectively by SKD and Helena. A district court is *not* limited to selecting one or the other of the specific royalty figures urged by counsel as reasonable. *Radio Steel & Mfg. Co.,* 788 F.2d at 1556–57, 229 USPQ at 433 (approving of the district court's use of its "own independent judgment" in rejecting the parties reasonable royalty figures of 2% and 21%, and instead awarding a 10% reasonable royalty). On the contrary, the determination of a reasonable royalty must be based upon the entirety of the evidence and the court is free to, indeed, must reject the royalty figures proffered by the litigants, as the district court did in this case, where the record as a whole leads the court to a different figure. Accordingly, unless we are convinced that the district court clearly erred in the inference it drew from all of the evidence, the 25% royalty must be affirmed as reasonable.

With respect to Helena's contention that there is no explanation for the amount of the district court's award, we disagree. As previously pointed out, the court enunciated a number of pertinent factors which entered into its assessment of the royalty which would result from hypothetical negotiations between a willing licensor and a willing licensee, an analysis endorsed in *H.M. Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1562, 219 USPQ 377, 385 (Fed.Cir. 1983).

SKD's evidence to support a 48% royalty figure was not credible. Thus, this rate was properly rejected. On the other hand, Helena proved it had entered licenses for other fecal occult blood test products at rates of 3% and 5%. However, it is undisputed that SKD was an unwilling licensor, and that it had never licensed the '970 patent technology. Furthermore, there was other evidence that SKD's '970 patent achieved immediate commercial success, that it satisfied a long felt need for that technology, and that SKD intended to maintain its exclusivity of the technology comprising the '970 patent by refusing to grant licenses under the patent. The district court correctly considered the factors enumerated in *Panduit* and *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120, 166 USPQ 235, 238 (S.D.N.Y.1970), *modified,* 446 F.2d 295, 170 USPQ 369 (2d Cir.), *cert. denied,* 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971), in finding what it considered a reasonable royalty and Helena has not persuaded this court that the 25% figure "is, in view of all the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonable royalty." *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 895 F.2d 1403, 1406, 13 USPQ2d 1871, 1874 (Fed.Cir.1990).

In sum, the district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence. A court is not restricted in finding a reasonable royalty to a specific figure put forth by one of the parties. In this case, the finding of 25% as a reasonable royalty based on all of the evidence is not clearly erroneous.

## VI

## COSTS

Considering the case as a whole, and the district court's stated reasons, we see no

abuse of discretion in that court's declining to make an award of costs in favor of SKD under 35 U.S.C. § 284. *Cf. General Motors Corp. v. Devex Corp.*, 461 U.S. at 655–57, 103 S.Ct. at 2062–63. Each party shall bear its own costs of this appeal.

AFFIRMED.