**NATIONAL PRESTO INDUSTRIES, INC., Plaintiff,**

v.

**BLACK & DECKER (U.S.) INC., Defendant,**

**and**

**Better Mousetraps, Inc., Third–Party Defendant.**

**No. 89 C 8978.**

United States District Court, N.D. Illinois, E.D.

March 22, 1991.

Gomer Winston Walters, Wood, Phillips, Mason, Recktenwald & Van Santen, Joseph A. Grear, Law Offices of Rolf Stadheim, Ltd., Chicago, Ill., for National Presto Industries, Inc.

Raymond P. Niro, Niro, Scavone, Haller & Niro, Ltd., Chicago, Ill., for Black & Decker (U.S.) Inc.

William Luciano Niro, Niro, Scavone, Haller & Niro, Ltd., Chicago, Ill., George P. Hoare, Jr., Hedman, Gibson, Costigan & Hoare, P.C., New York City, for Better Mousetraps, Inc.

## MEMORANDUM OPINION

WILL, District Judge.

Pending are two pretrial motions: (1) Black & Decker and Better Mousetraps have moved to bar National Presto from seeking or recovering damages based upon a reasonable royalty; (2) National Presto has moved to strike two of Black & Decker's affirmative defenses from its second amended answer. The first motion will be entered and continued, as discussed in the opinion below; the second motion is granted.

We begin with the defendants' motion to bar National Presto from seeking or recovering damages figured on a reason-

able royalty. Throughout this case, both in its answers to interrogatories and in statements in court, National Presto has proclaimed that, assuming a victory on liability, it does not intend to "present any contention ... as to the amount of a reasonable royalty...." " during a trial on damages. If that is its position, then it may not seek or recover damages based on a reasonable royalty.

Before asking for a reasonable royalty, National Presto will have to make a record showing what a reasonable royalty would be. We will not allow either side in this case to go to the jury with a blank request: "We are asking you for damages in the form of a reasonable royalty. We are not going to tell you anything about how a reasonable royalty might be calculated or how much it might be. That is for you, as jurors, to figure out on your own from your own minds. You guess what royalties typically are in this industry, or on comparable patents, and how much a negotiated royalty between these parties would have been in this case."

The patent statute provides for damages "in no event less than a reasonable royalty." 35 U.S.C. § 284. But that's assuming that damages have been proved up. Neither the patent statute nor the rules of evidence contemplate judgments or jury verdicts based on conjecture, and we will not permit that in this case. See *Lindemann Maschinefabrik v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1406–1407 (Fed.Cir.1990); *Devex Corp. v. General Motors Corp.*, 667 F.2d 347 (3d Cir.1981) (affirming an award of zero damages for lack of evidence and saying: "The statute requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."), quoted in *Lindemann*, 895 F.2d at 1407. See also *W.L. Gore & Associates, Inc. v. Carlisle Corp.*, 198 U.S.P.Q. 353, 368 (D.Del.1978) (a reasonable royalty should be calculated solely from the submitted evidence, not conjecture).

Neither *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 827–28 (Fed.Cir.1989) nor *Lindemann, supra,* dictate a different result. Granted, in both those cases the Federal Circuit approved awards of a reasonable royalty, notwithstanding that the prevailing plaintiffs in those cases had never asserted specific royalty rates. But those were bench trials; this will be a jury trial. A judge's determination of a reasonable royalty may be guided by prior experience in the area; a jury's is not. There is, moreover, no hint in either *Datascope* or *Lindemann* that the accused infringers ever made the argument that Black & Decker and Better Mousetraps are making here—that a patent owner who fails to put in evidence of what a figure for a reasonable royalty would be may not seek to recover one. *Datascope* and *Lindemann* do not decide the issue presented and argued by Black & Decker and Better Mousetraps.

If National Presto intends to seek or recover a reasonable royalty, it has one week from entry of this opinion to supply discovery on what a reasonable figure would be—and to identify an expert and make him or her available for a deposition, if expert testimony is going to be used. We will enter and continue the motion to bar Presto's recovery of a reasonable royalty for one week and either grant or deny this motion at the end of the week, consistent with National Presto's behavior in the interim.

We proceed, next, to Presto's motion to strike Black & Decker's third and fourth affirmative defenses, starting with the fourth. A defense may be struck if it is "insufficient ..., redundant, immaterial, impertinent ... or scandalous...." " Fed.R. Civ.P. 12(f).

Black and Decker's fourth affirmative defense rests on Presto's allegedly "unclean hands in suppressing and concealing its invention from the public and, then later, threatening retailers and competitors ... with patent infringement lawsuits, when it had not obtained patent protection and had not even filed its utility patent

application." That "affirmative defense" is insufficient as a matter of law.

■■■ Black and Decker has cited no authority for the proposition that "suppressing and concealing" an invention from the public supports an equitable defense of unclean hands, as opposed to a priority defense under 102(g). We have found no such authority and reject the proposition. "[Mere] concealment of an invention at least until an application for patent ... is filed is the normal behavior of the cautious inventor, and in itself ... is not reprehensible." *Dewey v. Lawton*, 347 F.2d 629, 632, 52 CCPA 1573 (1965).

■■■ As to "threatening retailers and competitors," Presto's letter terrorizing the trade has already been the subject of an order from this court. It is not grounds, however, for an affirmative defense of unclean hands in an action where the issues are infringement and priority of invention. The defense of unclean hands does not close the courthouse door to plaintiffs simply because they have behaved improperly, even unlawfully. For the maxim that equity helps only those with clean hands to apply a plaintiff's misconduct must be "unconscionable" and have some "immediate and necessary relation to the equity he seeks." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). In a patent case, the misconduct should "bear upon the validity of the patent or defendant's infringement of the patent for the unclean hands defense to be available." *Southwire Co. v. Essex Group, Inc.*, 220 U.S.P.Q. 1053 (N.D.Ill.1983).

■■■ Nothing in Presto's letter, or in the sending of it, has given Presto any advantage in prosecuting this lawsuit or bears, directly or indirectly, on the issues at the heart of this case—priority and infringement. Advertising that your product is covered by a patent or pending application when in fact it is not, or not yet, may be tortious, and might be grounds for a *counterclaim* in a suit for infringement, but it is not a legally sufficient affirmative defense. See *Republic Molding Corp. v.*

*B.W. Photo Utilities*, 319 F.2d 347 (9th Cir.1963).

Black & Decker's fourth affirmative defense is legally insufficient on its face. Neither Presto's menacing letter nor anything Presto may have done to conceal its invention from the public are grounds for an affirmative defense of unclean hands, though they might, possibly, be grounds for a counterclaim.

Black & Decker urges, nonetheless, that if it has not stated a defense of unclean hands its fourth affirmative defense at least makes out a case for patent misuse and is legally sufficient on that ground. The argument is unpersuasive.

■■■ Black & Decker has not pleaded "misuse"; it has pleaded "unclean hands," and the two are not interchangeable. The contours of the doctrine of misuse are vague—the Federal Circuit has said that it requires a showing "that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect," *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 999 (Fed. Cir.1986)—but, generally speaking, claims of patent misuse have been tested by conventional antitrust principles, and application of the doctrine has been confined to a small number of specific anticompetitive practices. See the discussion in *USM Corp. v. SPS Technologies Inc.*, 694 F.2d 505, 510–512 (7th Cir.1982) ("[W]e have found no cases where standards different from those of antitrust law were actually applied to yield different results.") Misuse, thus, has not traditionally been treated as a broad equitable defense akin to dirty hands.

Traditionally, misuse has been applied and limited to practices such as tying arrangements coupled with market power (requiring the purchase of unpatented goods for use with a patented apparatus or process), covenants not to deal (requiring a licensee not to deal in products that compete with the licensor's patent), and mandatory package licensing (insisting that a licensee pay license fees on two patents to get a license on either one). As should be apparent, the traditional examples of pat-

ent misuse bear very little if any resemblance to what has been alleged here—"suppressing or concealing" an invention before filing and sending threatening letters to competitors and retailers.

Black & Decker has not cited a patent misuse case involving conduct similar to Presto's mail campaign or suppression and concealment, and we are not persuaded that the doctrine of misuse reaches the misconduct Black & Decker has alleged. Terrorizing the trade with threatening mail, the way Presto did, looks more like a run of the mill tort (interference with contractual relations or prospective advantage) than an anticompetitive practice serious enough to give rise to a complete affirmative defense to infringement.

Accordingly, Black & Decker's fourth affirmative defense will be struck. It is legally insufficient on its face. "Our law is not rich in ... concepts of monopolistic abuse; and it is rather late in the day to try develop [new] ones [for patent misuse] without in the process subjecting the rights of patent holders to debilitating uncertainty." *USM Corp*, 694 F.2d at 512.

We move, next, to Presto's motion to strike Black & Decker's third affirmative defense. That defense alleges that:

National Presto abandoned and suppressed the invention having a scope broad enough to encompass the Black & Decker design and obtained, instead, a patent of narrower scope covering an invention different from the Black & Decker design.

The basis for this defense is mysterious. Black & Decker has offered no legal support for a contention that "abandonment and suppression" of a broader invention in favor of a narrower one, if that happened, constitutes unlawful behavior in itself, and it is thus unclear what this defense means.

In its memorandum opposing the motion to strike its defense, Black & Decker describes the substance of the third defense as follows:

Put very simply, Presto's '755 patent requires a retaining ring that provides both axial and bearing support for the cutting blade. The Black & Decker Handy Slice 'n Shred does not have a retaining collar that provides bearing support. That is the essence of Black & Decker's Affirmative Defense III.

If that description captures the essence of the third affirmative defense, then it is simply redundant with Presto's first affirmative defense, which states that "Black & Decker has not infringed the '755 patent." If the '755 patent requires a retaining ring, and Black & Decker's product doesn't have one, or the equivalent of one, then Presto's claim of infringement will obviously fail. But that is the noninfringement defense, already stated in Affirmative Defense I.

We note, too, that the wording of the third affirmative defense is scarcely different than the wording of Black & Decker's second affirmative defense, which states that "National Presto is estopped from asserting infringement because ... of [its] abandonment of any invention of a breadth sufficient to encompass the Black & Decker design."

The third affirmative defense appears, then, to be a defense of prosecution history estoppel, identical to the second affirmative defense. Black & Decker denies this, arguing that "this defense ... derives from the suppression and concealment issues that permeate the entire lawsuit ... [and] is an issue separate and apart from the prosecution history estoppel defense contained in Black & Decker's Affirmative Defense III." But Black & Decker, as we've remarked already, has offered no legal support for a defense based on "suppression and concealment," no legal argument, that is, to explain why Presto's concealment of a broader invention than was ultimately claimed, if there was in fact any such concealment, constitutes the basis for an affirmative defense to a charge of infringement.

Because Black & Decker's third affirmative defense is redundant with its first and second defenses, and because Black & Decker has offered no sufficient basis for distinguishing it from its first two defenses, Presto's motion to strike the Black & Decker's third defense is granted.

If the evidence ultimately is sufficient to support one or more equitable defenses, Black & Decker obviously will be able to raise such defenses at the close of the plaintiff's case or at the close of all of the evidence.

To summarize:

(1) Black & Decker and Better Mousetraps' joint motion to bar Presto from seeking or recovering damages calculated from a hypothetical reasonable royalty will be entered and continued for one week.

(2) Presto's motion to strike Black & Decker's third and fourth affirmative defenses is granted.