60 F.3d 839
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 SCHNEIDER (EUROPE) AG and Schneider (USA) Inc.,
Plaintiffs/Cross-Appellants,
v.
SCIMED LIFE SYSTEMS, INC., Defendant-Appellant.
 Nos. 94-1317, 94-1410, 94-1456.
 United States Court of Appeals, Federal Circuit.
 April 26, 1995.
 
 Before MAYER, Circuit Judge, SMITH, Senior Circuit Judge, and BRYSON, Circuit Judge.
 Concurring in part and dissenting in part opinion filed by Circuit Judge BRYSON.
 PER CURIAM.
 
 
 1
 Schneider (Europe) AG and Schneider (USA) Inc., brought this action against SciMed Life Systems, Inc., for infringement of United States Patent No. 4,762,129.* The United States District Court for the District of Minnesota held that the patent was not invalid, was infringed, and that the infringement was not willful. Schneider (Europe) AG v. SciMed Life Sys., Inc., 852 F. Supp. 813 (D. Minn. 1994). We affirm.
 
 
 2
 To prove a claim was obvious, an accused infringer must establish by clear and convincing evidence, 35 U.S.C. Sec. 282 (1988), that a person of ordinary skill in the relevant art would have found the claimed subject matter obvious in light of the prior art at the time the invention was made, id. Sec. 103. Although obviousness is ultimately a legal conclusion, it rests upon underlying findings of fact. Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1444, 223 USPQ 603, 606 (Fed. Cir. 1984). The district court's determination of the hypothetical person of ordinary skill in the relevant art is one such finding of fact subject only to review for clear error. Graham v. John Deere Co., 383 U.S. 1, 17 (1966); Hybritech, Inc. v. Monoclonal Antibodies, 802 F.2d 1367, 1379-80, 231 USPQ 81, 90 (Fed. Cir. 1986).
 
 
 3
 The district court found that a person of ordinary skill in this art in 1984 was "a practicing interventional cardiologist who performed dilation or coronary angioplasty dilation procedures" and included knowledgeable percutaneous transluminal coronary angioplasty (PTCA) practitioners such as those who had testified at trial. Viewing the prior art from this perspective, the court held that the '129 invention would not have been obvious in 1984.
 
 
 4
 Although the level of ordinary skill in the relevant art is a question of fact, SciMed claims that "the legal correctness of [the district court's] determination" is at issue because it misread and misapplied Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 227 USPQ 293 (Fed. Cir. 1985). SciMed contends, therefore, that we may review the district court's finding free from the clear error standard. We do not believe that the district court erred in applying Standard Oil or in its factual finding of the level of ordinary skill in the art.
 
 
 5
 Standard Oil stated: "A person of ordinary skill in the art is also presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate, whether by patient, and often expensive, systematic research or by extraordinary insights, it makes no difference which." 774 F.2d at 454, 227 USPQ at 298 (citation omitted). SciMed argues that the district court isolated this passage and misconstrued it to per se eliminate engineers, designers, and others who experiment in a given field from the definition of ordinary skill in the art. Extrapolating from this, SciMed contends the district court believed only a product "user," not an engineer or designer, could be a person of ordinary skill in this or any other art. SciMed also argues that the district court further misread Standard Oil to require limiting the prior art to only those references that a majority of "users" would consider relevant because only those references would constitute the "conventional wisdom." SciMed misreads the district court's opinion on both points.
 
 
 6
 The district court did not suggest a general per se rule eliminating engineers or designers from being considered persons or ordinary skill. Nor did it state that only product "users" were persons of ordinary skill. Instead, the court evaluated the state of the art in the relevant field at the relevant time and found it was in its infancy and that practicing angioplastic surgeons "designed the basic concepts in dilation in 1984 and showed them to engineers who built them." Rather than propounding a per se rule, the district court evaluated the level of skill when this particular field was far less advanced than it is now and as a factual matter found that engineers and designers were not of ordinary skill at that time.
 
 
 7
 Since the court's interpretation and application of Standard Oil was not legal error, we review the court's finding for clear error. Although the appellate record might suggest more than one appropriate level of ordinary skill, we will not reverse simply because we might have chosen a different one.
 
 
 8
 In determining the person of ordinary skill in the art, the district court found that "the PTCA field was in its infancy" and that "[t]here were only about 200 physicians performing angioplasty procedures in the United States by 1984. Only about 300 were performing them worldwide." In this infant field, the court found that engineers responded to the directions of the physicians. The court also heard testimony that the physicians determined which safety features to use in catheter design. Finally, one of SciMed's own witnesses acknowledged that persons of ordinary skill in the art included the same "knowledgeable PTCA practitioners" that the district court specifically included within its definition.
 
 
 9
 SciMed also misreads the court's analysis of the "conventional wisdom." The court did not state or imply that Standard Oil, 774 F.2d at 454, 227 USPQ at 298, required limiting the prior art to majority preferences in all cases. Rather, based on the testimony at trial, the court found a strong majority preference that had a substantial bearing on whether the '129 invention would have been obvious in 1984. That majority believed a catheter with a full-length guide lumen was necessary to accommodate specific medical functions. The '129 invention ran contrary to this view.
 
 
 10
 Consideration of this evidence is exactly what Standard Oil encourages. It does not require, nor did the district court interpret it to require, that minority views be dismissed without consideration when evaluating prior art. Nor did the district court refuse to consider the general knowledge in this field. Rather, it considered the strength and conviction of the conventional wisdom in the field at the time and concluded that it would have a significant impact on a person of ordinary skill when combining references to determine obviousness. SciMed is fundamentally wrong in contending that conventional wisdom should play no part in determining obviousness.
 
 
 11
 SciMed next claims that the district court should not have allowed Schneider (USA) to remain in this case as a co-plaintiff. It is undisputed that Schneider (Europe) has standing to sue for infringement of its patent, but SciMed claims that Schneider (USA) had only a "non-exclusive" sublicense that does not confer standing to recover infringement damages.
 
 
 12
 A "bare licensee" acting alone may not sue and recover damages for patent infringement. Waterman v. Mackenzie, 138 U.S. 252, 255 (1891); Kalman v. Berlyn Corp., 914 F.2d 1473, 1481, 16 USPQ2d 1093, 1099 (Fed. Cir. 1990). But a court does not look solely to the words of the agreement to determine the true nature of the license. Waterman, 138 U.S. at 256 ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of the provisions."); Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 874-75, 20 USPQ2d 1045 (Fed. Cir. 1991) (court looked to agreements and surrounding circumstances to hold that transfer was an assignment). The district court analyzed Schneider's corporate structure, the intent of the parties executing the agreement, and their business conduct under the agreement. It concluded this agreement was "an assignment that provides Schneider (USA) the ability to sue and recover for patent infringement as co-plaintiff with Schneider (Europe)." Similar suits have been approved where necessary to protect the rights of all the parties and to bring a resolution to the underlying dispute. See Kalman, 914 at 1481-82, 16 USPQ2d at 1099; Weinar v. Rollform, Inc., 744 F.2d 797, 806-07, 223 USPQ 369, 374 (Fed. Cir. 1984). We see no reason to disagree with the district court here.
 
 
 13
 SciMed also contends that the district court erred in awarding Schneider (Europe) lost profits for SciMed's foreign sales of infringing catheters it manufactured in the United States. Citing Trell v. Marlee Electronics Corp., 912 F.2d 1443, 1445, 16 USPQ2d 1059, 1061 (Fed. Cir. 1990), and Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., 895 F.2d 1403, 1406 n.2, 13 USPQ2d 1871, 1874 n.2 (Fed. Cir. 1990), SciMed argues that Schneider (Europe) could, at most, recover a reasonable royalty for the infringing manufacturing in the United States, not lost profits resulting from SciMed's foreign sales. We are aware of no rule that a plaintiff cannot recover lost profits for foreign sales of infringing products manufactured in the United States. Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 824-27, 11 USPQ2d 1321, 1323-26 (Fed. Cir. 1989), applied the four-prong test from Panduit Corp. v. Stahlin Brothers Fibre Works, Inc., 575 F.2d 1152, 1156, 197 USPQ 726, 729-30 (6th Cir. 1978), to determine whether a plaintiff could recover lost profits for the infringer's foreign sales of infringing products manufactured in the United States. Although the court concluded that the Panduit criteria for lost profits were not met, 879 F.2d at 827, 11 USPQ2d at 1326, it would have been completely unnecessary to consider this test if that plaintiff had been prevented from recovering lost profits in the first instance. The district court did not err in awarding lost profits. We are similarly unconvinced that the parties' remaining assignments of error warrant reversal of the judgment.
 
 
 
 *
 United States Patent No. 4,762,129 issued August 9, 1988. Reexamination Certificate B1 4,762,129 issued July 2, 1991